## COUNTY OF MARQUETTE v. JOHN E. WARD ET AL.

*County treasurer's bond—Liability for liquor taxes*

A county treasurer's bond requires him to account for "all moneys which shall come to his hands as treasurer." *Held* that this covers moneys collected by him under the Liquor Tax Law though they neither belong to the county nor go into the county treasury.

An official bond covers whatever duties were imposed before it was given even though such duties were added after the passage of the statute prescribing the terms of the bond.

A declaration on the official bond of a county treasurer in an action to recover moneys which have passed into his hands, describes such moneys properly enough as moneys of the county where, as in the case of liquor taxes, the county collects them only as trustee for its towns and villages.

A county treasurer who receives moneys collected on a judgment in an action upon the bond of a predecessor accounts for them precisely as if he had originally collected them from the tax-payers.

Juries must decide upon evidence; they cannot guess at facts in default of evidence.

In an action upon the bond of a defaulting treasurer the question arose whether the defalcation was confined to his second term of office for which the bond was given. His cash book showed that at the end of his first term there was no deficiency, but he testified that there was "probably" or "possibly" a deficiency though he did not discover it for a year afterwards. *Held* that there was nothing in this to show a defalcation during the first term.

Error to Marquette.   (Grant, J.)   Jan. 18.—Feb. 27.

Debt.   Defendants bring error.   Affirmed.

*E. E. Osborn* and *Geo. W. Hayden* for appellants. Sureties on an official bond are liable for the officer's conduct in his official capacity alone : *Furlong v. State* 58 Miss. 717; and not for his acts in executing superadded duties: *Lyman v. Conkey* 1 Met. 321; *People v. Moon* 3 Scam. 123; *Kerr v. Brandon* 84 N. C. 128; *People v. Gardner* 55 Cal. 304; which really invest him with another office: *Skillett v. Fletcher* L. R. 2 C. P. 469; *White v. East Saginaw* 43 Mich. 570.

*John Q. Adams* and *W. P. Healy* for appellee.   The cash book of a county treasurer is a public record kept under the sanction of an official oath and must be turned over to his successor in office : Comp. L. § 518; Act 208 of 1875; Act 38 of 1879; it is prima facie evidence of the facts therein stated : *People v. McKinney* 10 Mich. 54, 96–7, 105–6; *State Bank v. Chapelle* 40 Mich. 447; a jury would not be warranted in finding against a deed, on vague, indefinite and uncertain evidence : *Watson v. Peters* 26 Mich. 514.

Cooley, J.   This action is upon the official bond of Ward as treasurer of the county of Marquette.   Ward was first elected treasurer for the term beginning January, 1879,

and again for the term beginning January, 1881. The bond in suit was for the second term. Ward resigned January 24, 1882, at which time the books showed in his hands $18,005.32. This sum he has failed to pay over to his successor, and judgment has been recovered for it in this suit.

In the declaration the treasurer is alleged to have "received into his hands as such county treasurer a large sum of money belonging to the plaintiff, to-wit," etc. On the trial it appeared that $11,205.94 of the deficiency was moneys which the treasurer had received for the various townships and cities of the county for liquor taxes, and only $6799.91 belonged to the county. For the moneys belonging to the cities and townships it was insisted there could be no recovery on the bond. It was also claimed that there was evidence in the case from which it was inferable that the defalcation, in part at least, occurred during the treasurer's first term; but the circuit judge thought otherwise, and directed a verdict for the plaintiff for the whole amount claimed. This statement sufficiently indicates the points at issue.

I. That the liquor taxes do not belong to the county, and do not when collected go into the county treasury, was shown in the case of *Marquette County v. Treasurer of Ishpeming* 49 Mich. 244. The provisions of the statute were given in the opinion in that case, and it was said that the treasurer in collecting and accounting for those taxes was acting as agent of the municipalities, and not as agent of the county. But this does not determine that the moneys are not within the purview of the official bond of the treasurer. Though he receives the moneys as agent for the municipalities, he receives them in his official capacity as county treasurer; and if his bond covers all receipts in that capacity, it must cover these with the rest.

The statute under which the bond is given requires a bond conditioned that the treasurer " and his deputy, and all persons employed in his office, shall faithfully and properly execute their respective duties and trusts, and that such

treasurer shall pay, according to law, all moneys which shall come to his hands as treasurer, and will render a just and true account thereof whenever required by the board of supervisors, or by any provision of law, and that he will deliver over to his successor in office, or to any other person authorized by law to receive the same, all moneys, books, papers, and other things appertaining or belonging to said office." Comp. L. § 512. The bond in suit was given in compliance with this provision. In its terms it could not well be more general. Moneys received officially from any source whatsoever are apparently within them, and the treasurer is required to account not exclusively to the supervisors or to the county, but to any person authorized by law to receive from him whatever he may hold officially in custody. This statute received attention in *People v. Supervisors of St. Clair* 30 Mich. 388, and we there held that the bond was not restricted as a security to the moneys received for the county, but covered the whole range of the treasurer's official duties. The fact that the tax on the liquor traffic was for the first time imposed after this statute, which fixed the condition of the treasurer's bond, was passed is of no moment; the tax was provided for before this bond was given, and the sureties must be supposed to have had in view when they signed the bond all duties which existing statutes imposed upon their principal. They had notice that the liquor tax was to be received by him officially, and that he must account for it as treasurer.

There was no impropriety in describing the moneys in the declaration as the moneys of the county. The county in this suit will collect such portion as belongs to the municipalities as trustee, and they will pass through the hands of its treasurer to the corporations entitled to them. There is nothing in the suggestion that if the county collects on such a declaration it will be under no obligation to account. The treasurer, who will receive the moneys, if any are collected on judgment, will account for them precisely as he would on an original collection from tax-payers.

II. That there was some evidence of a defalcation dur-

ing the first term is insisted upon with much earnestness and with some plausibility. The argument is all made on the evidence of Ward, the defaulting treasurer. His official cash-book was put in evidence, which showed that he had on hand at the beginning of his second term $11,678.74. He was then questioned by the defense respecting these moneys; where they were at the time; and it appeared that he kept accounts in three banks, and usually kept some money in his safe also. He was also accustomed to make advances on county matters. What the precise condition of things was on January 1, 1881, he could not say; it was impossible for him to account now for the whole sum of $11,-648.74. There was "probably" or "possibly"—to use his words—some deficiency at that time, but he could not say that there was. He did not discover that he was deficient for a year thereafter.

It seems to us evident that there was nothing in this from which the jury could find a defalcation in January, 1881. The cash-book made out at least a prima facie case of no defalcation, and the most that can be said of Ward's evidence is that he was unable when the case was tried to account for all the moneys which the cash-book then showed he had on hand. But he could not say how much, if anything, was deficient, and if the jury were allowed to guess upon his evidence, nothing in what Ward testified to would limit their guessing within any particular bounds. But juries are to judge; to decide upon evidence; not to guess, in default of evidence.

We find no error in the record, and it must be affirmed with costs.

GRAVES, C. J. and MARSTON, J. concurred.