RICHARD BLACO ET AL. V. STATE OF NEBRASKA ET AL.

FILED MAY 3, 1899.    No. 10461.

| 58 | 557 |
|----|-----|
| 59 | 472 |
| 59 | 477 |

| 58 | 557 |
|------|-----|
| s60 | 422 |
| 60 | 516 |

1. **Official Bonds: SURETIES: ESTOPPEL.** When sureties, for the purpose of enabling their principal to assume the duties, and enjoy the emoluments, of an office to which he has been appointed, execute an official bond containing a recital that the appointment has been duly made, they will not be permitted afterwards, when sued on such bond, to deny the validity of the act creating the office.

2. ——: ——: ——. In such case the law authorizing the appointment to be made is constructively incorporated into the bond and its validity affirmed by the obligors.

3. **Inspector of Oils: DUTIES.** Under the provisions of chapter 64, article 2, Compiled Statutes, 1887, it is the duty of the inspector of oils and his deputies to inspect every oil which is a product of petroleum and which is intended by the owner to be put upon the market and sold for illuminating purposes.

4. **Inspection of Oils: GASOLINE.** The act providing for the inspection of oils recognizes gasoline as a product of petroleum and contemplates its inspection when kept for sale as an illuminant.

5. ——: ——. The fact that no grade or quality of gasoline will bear the statutory test does not exempt such oil from inspection, if the owner intends to offer it for sale as an illuminant.

6. ——: CONSTRUCTION OF STATUTE. The design of the law providing for the inspection of oils was not merely to prescribe a test for those products of petroleum which might or might not, according to their quality, be dangerously inflammable, but rather to require an effective inspection of every product of petroleum intended to be sold and used in this state for illuminating purposes.

7. ——: FEES: GASOLINE. A person owning gasoline, kept or intended for sale as an illuminating oil, is, under the act of 1887, legally bound to submit it for inspection; and he is also bound to pay the inspector the statutory fees for the services rendered.

8. ——: ——: OFFICIAL BOND. The fees so paid are paid for official services and are within the purview of the inspector's bond.

9. **Official Bonds: LIABILITY OF SURETIES.** In an action on the bond of a public officer the sureties cannot successfully defend on the ground that the money which their principal misappropriated was received by him for official acts irregularly performed.

10. **Inspector of Oils: FEES.** When the inspector of oils examines gasoline and places upon the cask in which it is contained the statutory brand of condemnation, he performs an official act and the fees received by him for the services are officially received, although the dangerously inflammable character of the oil has not been determined by actually applying the test prescribed by the statute.

11. **Officers: DUTIES: PRESUMPTIONS.** The presumption that a public officer has executed with fidelity the duties with which he was charged is a mere arbitrary rule of law which loses its force and effectiveness when met by opposing proof.

12. ———: ———: ———. There being in this case evidence that the inspector of oils was indebted to the state when he went out of office, and the answer containing an implied admission that he had not lawfully disbursed all moneys received for inspecting gasoline, the presumption of official faithfulness does not obtain.

13. **Principal and Surety: FORM OF JUDGMENT: REVIEW.** The failure of the clerk of the district court, in recording a judgment, to certify, in accordance with the provisions of section 511 of the Code of Civil Procedure, that some of the defendants in the action are sureties is reversible error, although the matter has not been brought to the attention of the trial court by motion or otherwise.

ERROR from the district court of Lancaster county. Tried below before HOLMES, J. *Reversed.*

The opinion contains a statement of the case.

*E. Wakeley* and *Lee S. Estelle,* for plaintiffs in error:

The act purporting to create the office of state inspector of oils is void, because it is an attempt to create an executive state office in violation of section 26, article 5, of the constitution, forbidding the creation of offices other than those named in the constitution. (*In re Railroad Commissioners,* 15 Neb. 679; *Rowland v. City of New York,* 83 N. Y. 372; *United States v. Hartwell,* 6 Wall. [U. S.] 385; *Shelby v. Alcorn,* 36 Miss. 273; *Hill v. Boyland,* 40 Miss. 628; *Miller v. Supervisors,* 25 Cal. 96; *United States v. Maurice,* 2 Brock. [U. S.] 103; *Hall v. State,* 39 Wis. 79; *Henley v. Mayor,* 5 Bing. [Eng.] 91; *Commonwealth v. Evans,* 74 Pa. St. 124; *Bradford v. Justices of Inferior Court,* 33 Ga. 332;

*People v. Kelly,* 77 N. Y. 503; *State v. Valle,* 41 Mo. 29; *Vaughn v. English,* 8 Cal. 40; *United States v. Tinklepaugh,* 3 Blatch. [U. S.] 425.)

The law being unconstitutional, there was no such office as state oil inspector. (*Norton v. Shelby County,* 118 U. S. 425; *Hildreth v. McIntire,* J. J. Marsh. [Ky.] 206; *Hawver v. Seldenridge,* 2 W. Va. 274; *Petition of Hinkle,* 31 Kan. 712; *Ex parte Snyder,* 64 Mo. 58; *State v. City of Camden,* 28 Atl. Rep. [N. J.] 82; *Carleton v. People,* 10 Mich. 250; *Town of Decorah v. Bullis,* 25 Ia. 12; *Ex parte Strang,* 21 O. St. 610.)

The sureties are not liable for fees paid for inspection or pretended inspection of gasoline. (*Commonwealth v. Jackson,* 1 Leigh [Va.] 531; *Foxcroft v. Nevens,* 4 Greenl. [Me.] 72; *Leigh v. Taylor,* 7 Barn. & Cres. [Eng.] 491; *People v. Pennock,* 60 N. Y. 421; *Ward v. Stahl,* 81 N. Y. 406; *Carey v. State,* 34 Ind. 105; *State v. Givan,* 45 Ind. 267; *Scott v. State,* 46 Ind. 203; *People v. Tompkins,* 74 Ill. 482; *Linch v. City of Litchfield,* 16 Ill. App. 612; *Saltenberry v. Loucks,* 8 La. Ann. 95; *City of San Jose v. Welch,* 65 Cal. 358; *Lowe v. City of Guthrie,* 41 Pac. Rep. [Okla.] 198; *United States v. Adams,* 24 Fed. Rep. 348; *United States v. Morgan,* 28 Fed. Rep. 48; *McCormick v. Thompson,* 10 Neb. 484; *Moore v. State,* 53 Neb. 831; *State v. Holcomb,* 56 Neb. 583.)

The case is one in which a public officer is presumed to have done his duty and the presumption is not overcome by proof. Even in a suit against himself alone, Hilton would have been entitled to the benefit of this comprehensive presumption. In the case of sureties who undertake merely that a public officer will perform his duty, there can be no presumption that he has not done it. His default must be alleged and proved. (*United States v. Earhart,* 4 Sawy. [U. S.] 245; *Hartwell v. Root,* 19 Johns. [N. Y.] 345; *Commonwealth v. Slifer,* 25 Pa. St. 23; *Squier v. Stockton,* 5 La. Ann. 120; *United States v. Dandridge,* 12 Wheat. [U. S.] 69; *Bruce v. United States,* 17 How. [U. S.] 437.)

Admissions of an officer are only *prima facie* evidence against sureties. (*United States v. Boyd*, 5 How. [U. S.] 29, 50; *Bissell v. Saxton*, 66 N. Y. 55; *Placer County v. Dickerson*, 45 Cal. 12; *Nolley v. Callaway County Court*, 11 Mo. 447; *Townsend v. Everett*, 4 Ala. 607; *State v. Rhoades*, 6 Nev. 352; *State v. Hill*, 47 Neb. 456; *Buffalo County v. Van Sickle*, 16 Neb. 363.)

References as to the unconstitutionality of the act: *Gibson v. Ogden*, 9 Wheat. [U. S.] 1; *Denn v. Reid*, 10 Pet. [U. S.] 524; *Smith v. State*, 66 Md. 215; *Woodberry v. Berry*, 18 O. St. 456; *Newell v. People*, 7 N. Y. 9; *Koch v. Bridges*, 45 Miss. 247; *Frye v. Chicago, B. & Q. R. Co.*, 73 Ill. 399; *People v. Purdy*, 2 Hill [N. Y.] 31.

*C. J. Smyth*, Attorney General, for the state.

The act creating the office of state inspector of oils is not unconstitutional. (*People v. Rogers*, 13 Cal. 160; *State v. Wilson*, 29 O. St. 347; *State v. Weston*, 4 Neb. 234; *State v. Smith*, 35 Neb. 25.)

The officer's default was proved. (*Stoner v. Keith County*, 48 Neb. 292.)

Defendants are estopped from denying the constitutionality of the law under which the officer collected the money in controversy. (*Chandler v. State*, 1 Lea [Tenn.] 296; *Swan v. State*, 48 Tex. 120; *Morris v. State*, 47 Tex. 583; *Commonwealth v. City of Philadelphia*, 27 Pa. St. 497; *Middleton v. State*, 120 Ind. 166; *Mayor v. Harrison*, 30 N. J. Law 73; *Ferguson v. Landram*, 5 Bush [Ky.] 237; *Mississippi County v. Jackson*, 51 Mo. 23; *Vermillion Parish v. Brookshire*, 31 La. Ann. 736; *Miller v. Moore*, 3 Humph. [Tenn.] 189; *O'Neal v. School Commissioners*, 27 Md. 227; *People v. Brown*, 55 N. Y. 180; *Boehmer v. County of Schuylkill*, 46 Pa. St. 452; *McLean v. State*, 8 Heisk. [Tenn.] 22.)

The judgment may be modified to show who was principal and who were sureties. (*People v. Love*, 25 Cal. 520; *People v. Rooney*, 29 Cal. 643; *Schenectady & S. P. R. Co. v. Thatcher*, 6 How. Pr. [N. Y.] 226.)

SULLIVAN, J.

In 1887 there was passed and approved an act of the legislature providing for the appointment of a state inspector of oils, defining his duties, fixing his fees, and prescribing penalties. (Compiled Statutes 1887, ch. 64, art. 2.) In March, 1893, Lozein F. Hilton was, under the authority of this statute, appointed state inspector of oils. He accepted the appointment and, in compliance with section 4 of the act, executed to the state of Nebraska a bond conditioned as follows: "The condition of this bond is such, that whereas the above bounden, Lozein F. Hilton, has been duly appointed by the governor of the state of Nebraska to the office of state inspector of oils: Now, therefore, if the said Lozein F. Hilton shall well and faithfully perform the duties of said office as imposed upon him by law in that behalf, then this obligation to be void; otherwise to be and remain in full force and effect." The sureties upon this obligation were Richard Blaco, W. C. Walton, E. A. Stewart, and John A. McKeen. On January 31, 1895, Hilton retired from office without having accounted for the sum of $5,622.56, which, it is claimed, was received by him in his official capacity. This action was thereupon instituted against him and his sureties to recover the alleged shortage. The cause was tried to a jury, and the trial resulted in a verdict against all of the defendants for the full amount claimed in the petition. A motion for a new trial was overruled and judgment rendered on the verdict. The sureties prosecute error, making Hilton a party defendant.

The first ground upon which it is claimed there should be a reversal of the judgment in favor of the state is that the law creating the office of state inspector of oils is unconstitutional, and that Hilton's official bond is therefore void. We need not in this action concern ourselves with the validity of the law. Whether it is void or valid is altogether immaterial. Under its authority Hilton accepted a commission from the governor, and for nearly

40

two years performed the duties which the law imposed
and received, and enjoyed the emoluments for which it
provided. For the express purpose of securing to Hilton
authority from the state to perform those duties and to
receive those emoluments the plaintiffs in error executed
to the state the bond in suit. In that bond they affirmed
that Hilton had been duly appointed, and they therein
undertook to answer for any failure on his part to per-
form the duties imposed upon him by the act. In affirm-
ing that Hilton was duly appointed, the sureties neces-
sarily affirmed the validity of the law under which the
appointment was made, and they cannot now repudiate
their declaration nor impeach its truth. Having by their
voluntary act secured to Hilton the fruits of the law,
which was constructively incorporated into the bond,
they are now, by a plain principle of justice, forbidden
to deny that the law was constitutionally enacted.
(*Chandler v. State*, 1 Lea [Tenn.] 296; *Village of Olean v.
King*, 116 N. Y. 355; *Swan v. State*, 48 Tex. 120; *Morris v.
State*, 47 Tex. 583; *Waters v. State*, 1 Gill [Md.] 302; *Com-
monwealth v. City of Philadelphia*, 27 Pa. St. 497; *Middleton
v. State*, 120 Ind. 166; *Hoboken v. Harrison*, 30 N. J. Law
73; *Ferguson v. Landram*, 5 Bush [Ky.] 237; *Mississippi
County v. Jackson*, 51 Mo. 23; *Police Jury v. Brookshier*, 31
La. Ann. 736.) In *Middleton v. State, supra*, it was held
that the sureties of a city clerk, who had acted as col-
lector and custodian of public moneys under the color of
a void ordinance, were estopped to deny that the ordi-
nance was void because they had contracted with refer-
ence to it. Discussing the question the court say: "In
this case, the ordinances under which the principal re-
ceived the money now sought to be recovered were in ex-
istence at the time the bond in suit was executed. His
sureties undertook, voluntarily, that he should account
for all moneys collected under such ordinances, and we
know of no valid reason why they should not live up to
that agreement. By this undertaking they enabled the
principal to obtain the possession of the money, and we

do not think they should be permitted to say now that he received it without authority." The case of *Hoboken v. Harrison, supra,* was an action against the principal and sureties on a bond given by Harrison, who had been appointed to an office which the city authorities had by an invalid ordinance attempted to create. The bond recited that Harrison had been duly appointed to the office of collector of assessments for street improvements, and it was held that the sureties would not be permitted to deny that the recital was true. Both on reason and authority we must, for the purpose of this case, assume that the law providing for the inspection of oils is a constitutional and valid act. But while declining at this time to inquire into the validity of the law, we do not wish to be understood as intimating that it may not be valid.

Another defense to the action relied on in the trial court was that a large part of the fees collected by Hilton was for the inspection of gasoline, and that such inspection was not required nor contemplated by the statute. We think it was. Section 1 of the act is as follows: (Compiled Statutes 1887, ch. 64. art. 2.) "All mineral or petroleum oil, or any oil, fluid, or substance which is a product of petroleum or into which petroleum or any product of petroleum enters or is found as a constituent element, whether manufactured in this state or not, shall be inspected as provided in this act before being offered for sale for consumption for illuminating purposes in the state." Section 11 distinctly recognizes gasoline as a product of petroleum; and the evidence conclusively shows that it is such product and that it is used to some extent as an illuminant. What, under the law, is the duty of the state inspector of oils? By section 2 he is required to "examine and test the quality of all such oils offered for sale" and stamp upon the package, barrel, or cask the result of his inspection. The words "such oils" refer, of course, to the oils mentioned in the preceding section. It is also provided in section 2 that the inspector, or his deputies, may enter upon any premises and inspect

any such oils there found which are "intended for consumption for illuminating purposes within the state." Section 3 declares that it shall be the duty of the inspector and his deputies, when called upon for that purpose, to promptly "inspect all oils hereinbefore mentioned." Taking these several provisions together they seem, in unmistakable terms, to impose upon the inspector and his deputies the duty of inspecting every oil which is a product of petroleum and which is intended by the owner to be put upon the market and sold as an illuminating oil. They demonstrate, we think, that the inspection of gasoline is within the purview of the law, and that the duty to make the prescribed inspection may, in a proper case, be enforced by mandamus. This view is reinforced by other provisions of the act. The purpose of the legislature was to protect the public by preventing the sale of illuminating oils which are dangerously inflammable. To effect this purpose penalties were provided. Section 2 prescribes a penalty for selling, or offering for sale, for illuminating purposes, any oils that have been examined, tested, and marked "Rejected for illuminating purposes." By section 7 it is forbidden, under penalty, to sell, or attempt to sell, "any of the illuminating oils hereinbefore mentioned before having the same inspected as provided in this act." Now, if gasoline is not one of the oils previously mentioned in the act, there is, of course, in this section no prohibition against selling it or offering it for sale as an illuminant. Sections 2 and 7 contain the only provisions to be found in the act relating to unlawful sales; so that, if gasoline is not within the class of oils which are subject to inspection, its sale for illuminating purposes is not prohibited. Upon this point there is absolutely no ground for controversy. There is no room for two opinions. The proviso contained in section 11 is, however, framed on the assumption that the act does forbid generally the sale of gasoline as an illuminating oil, unless it has been first duly inspected and approved, for it is there in effect

declared that the general provisions of the law shall not apply to gasoline and other of the lighter products of petroleum when the same are sold for use in street lamps. If gasoline is not subject to inspection, and if its sale as an illuminant is not unlawful, the proviso has certainly no office to perform, and no valid reason can be given for its existence.

But it is insisted that as no quality or grade of gasoline will bear the prescribed test, the legislature could not have contemplated its inspection. This argument has weight, but it is not conclusive. The design of the law, as we interpret it, was not merely to prescribe a test for those products of petroleum which might or might not, according to their quality, be dangerously inflammable, but rather to require an effective inspection of every product of petroleum kept, or intended, for sale for illuminating purposes. An owner of gasoline kept or intended for sale as an illuminating oil was, under the act of 1887, legally bound to submit it for inspection, and he was also bound to pay the inspector the statutory fees for the services rendered. Such fees, then, were received for the performance of official acts. They were received in an official capacity and are undoubtedly within the purview of the inspector's bond.

It is said, however, that Hilton did not in fact subject gasoline to the Foster test, and that he usually failed to brand the vessels in which it was contained. It is true that the Foster test was not applied, and that frequently —perhaps most frequently—the inspector's brand was not affixed by the hand of either himself or a deputy. But this surely is no answer to an action on the bond. How can the irregularity of the inspection concern the sureties? The person called upon to pay fees might, indeed, demand the effective test for which the law provides, but if he waive the test and consent that his oil may be marked "Rejected for illuminating purposes," no one else can justly complain. The object of the statute was accomplished and the interests of the public prop-

erly safeguarded when the inspector, by his own act or by an act done at his instance and under his supervision, placed the statutory brand of condemnation upon the oil inspected. Whether the fees were received for services regularly or irregularly performed is not material in this action. They were received on account of official services which Hilton was authorized to perform, and which he did in fact perform in a manner satisfactory to every one concerned, although not with the precision and exactitude prescribed by the statute. For money so received the sureties are liable. Such is the doctrine of *State v. Moore,* 56 Neb. 82, 76 N. W. Rep. 474, where it is said: "For all wrongful acts or omissions of a public officer within the limits of what the law authorizes or enjoins upon him as such officer, his sureties are liable." (See, also, *King v. United States,* 99 U. S. 229; *Berrien County v. Bunbury,* 45 Mich. 79, 7 N. W. Rep. 704; *Marquette County v. Ward,* 50 Mich. 174, 15 N. W. Rep. 70.)

The balance in the hands of Hilton on January 31, 1895, clearly belonged to the state, and the law imposed upon him the duty to pay it over to the state treasurer. Whether he has so paid it is one of the questions upon which the parties are not agreed. The sureties assert that he has, predicating their assertion on the general presumption that public officers execute with fidelity the duties with which they are charged. This presumption is a mere arbitrary rule of law. It possesses no inherent probative force, and when met by opposing evidence is entirely destroyed. In this case it was met by opposing proof. When Hilton went out of office he left behind him a record in his own handwriting which shows that he was then indebted to the state in the sum of $5,622.56. This record evidences the state of Hilton's account at the last moment of his official life, and, being an admission against interest, it has evidential value apart from the presumption that the entries are true. Besides, the answer impliedly admits that all the moneys received for the inspection of gasoline were not lawfully disbursed.

Paragraph 4½ alleges that all moneys received by Hilton and his deputies, and not applied to the payment of salaries and expenses, or paid into the state treasury, were paid and received for the pretended inspection of gasoline. This admission is fatal to the presumption on which the sureties rely. Hilton having failed while in office to pay to the state the balance in his hands, the burden was on the defendants to allege and prove that he paid such balance afterwards. (*Stoner v. Keith County*, 48 Neb. 279.)

Another and final reason assigned for a reversal of the judgment is that the clerk of the district court failed, in recording the judgment, to certify that Hilton was principal and that the other defendants were sureties on the bond in suit. Section 511 of the Code of Civil Procedure requires such certification, and it has been held in several cases that a failure to comply with its provisions is reversible error. (*Van Etten v. Kosters*, 48 Neb. 152; *Kroncke v. Madsen*, 56 Neb. 609, 77 N. W. Rep. 202; *Maxwell v. Home Fire Ins. Co.*, 57 Neb. 207.) The statute, while enjoining a duty on the clerk, undoubtedly contemplates action by the court. The judgment is reversed and the cause remanded with direction to the district court to render a judgment on the verdict and certify therein that Hilton is principal and that the plaintiffs in error are sureties on the bond.

REVERSED AND REMANDED.