## NATIONAL SURETY CO. v. LYONS, County Treasurer.

(Circuit Court of Appeals, Eighth Circuit. December 20, 1926.)

No. 7314.

1. **Depositaries** ⬡═13—**Surety on bond of depositary of county funds held not liable under Nebraska statute for more than maximum authorized deposit (Comp. St. Neb. 1922, §§ 6193, 6195).**

Under Comp. St. Neb. 1922, §§ 6193, 6195 surety on bond given by depositary of county

moneys is not liable in excess of the maximum authorized deposit.

2. **Contracts** ⬡═144—**Generally law of place becomes part of contract.**

Generally the law of the place where a contract is made becomes a part of the contract, which is to be construed and its obligations determined accordingly.

3. **Depositaries** ⬡═14—**Surety in action on bond of depositary of county moneys held not liable for attorney's fees as costs (U. S. Comp. St. §§ 1375, 1378; Comp. St. Neb. 1922, § 7811).**

Under Rev. St. §§ 823, 824 (U. S. Comp. St. §§ 1375, 1378), and Comp. St. Neb. 1922, § 7811, surety in action on bond of depositary of county moneys *held* not liable for attorney's fees taxed as costs.

4. **Courts** ⬡═357—**Where Congress has not regulated the subject of costs, federal courts will follow the state courts on the subject (Comp. St. § 1538).**

It is a general rule, recognized by Rev. St. § 721 (Comp. St. § 1538), that, where Congress has not regulated the subject of costs, the federal courts will follow the state courts on the subject, and award to the parties the costs to which they would be entitled, if the litigation were in the state courts.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Edwin B. Lyons, County Treasurer, etc., against the National Surety Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions to set aside judgment and to vacate order taxing attorney's fees as part of costs.

Rush C. Clarke and James G. Mothersead, both of Scottsbluff, Neb. (R. T. York and A. R. Honnold, both of Scottsbluff, Neb., on the brief), for plaintiff in error.

E. D. Crites, of Chadron, Neb. (F. A. Crites, of Chadron, Neb., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

LEWIS, Circuit Judge. The First National Bank of Harrison, Nebraska, was appointed depository of funds belonging to Sioux County in that State, and, as the State statute required, gave a bond with appellant as its surety, conditioned that the bank would keep all sums of money deposited with it by the treasurer of the county subject to his order and would pay the same over upon the written demand of said treasurer. The bond recited that the deposits should be subject to withdrawal by the county treasurer as the requirements of the county might demand, and that the amount on deposit might be increas-

ed or decreased from time to time as the treasurer might determine. The depository became insolvent at a time when there was on deposit with it funds to the amount of $35,-395.70, and the county treasurer thereupon brought this action on the bond against the surety and asked judgment for damages in the full penal sum named in the bond ($30,000) and for a reasonable sum for plaintiff's counsel as attorney fees to be taxed as a part of the costs.

The answer alleged that the First National Bank of Harrison had an authorized capital of $50,000, that under the State statute the county treasurer was forbidden to make deposits in said bank in excess of 50 per cent. of the paid-up capital of the bank, that the statute made it criminal for him to exceed that limit and that appellant as surety was not liable in excess of that amount, to wit: $25,-000.

A jury was waived and the case submitted to the court on an agreed statement of facts, which were substantially as they were stated in the pleadings. The court gave judgment for plaintiff in the sum of $30,000, the full amount named in the bond, found that $3,000 was a reasonable allowance as a fee for plaintiff's attorney in the cause and taxed that sum as a part of the costs against the defendant. To this action of the court objections were made and exceptions properly saved. The case was then brought here on writ of error, and counsel presents two questions, each one of law, as claimed error:

(1) Whether the surety was liable on the depository bond in excess of 50 per cent. of the paid-up capital stock of the bank—$25,-000.

(2) Whether the plaintiff in the case (defendant in error here) was entitled to have an attorney's fee taxed as a part of the costs under the provisions of the Nebraska statute. [1] The first question is based on that part of section 6193, Comp. Stat. Neb. 1922, which reads:

"The treasurer shall not have on deposit in any bank at any time more than the maximum amount of the bond given by said bank in cases where the bank gives a guaranty bond, nor in any bank giving a personal bond more than one-half of the amount of the bond of such bank, and the amount so on deposit at any time with any such bank shall not in either case exceed fifty per cent. of the paid up capital stock of such bank."

The statute makes three limitations on the maximum of deposits, the third being cumulative of the other two; and they seem to be of equal importance. The statute also (sec-

16 F.(2d)—44

tion 6195) makes it a misdemeanor for the county treasurer to fail or refuse to do or perform any duty required of him by the statute. In view of the statute it is contended that the obligation of the surety on the bond was limited to $25,000, inasmuch as it was prohibited and made unlawful for the treasurer to have on deposit with the bank at any one time more than that sum; and it is claimed that the Supreme Court of the State has so construed the statute. If that be so we will, of course, follow the interpretation of the statute given to it by that court. It can hardly be said that the exact issue made in this case on the third limitation has been presented to that court, but it has considered this statute, the duties of the county treasurer under it and the obligation of a surety of the depository bank in several cases, and expressed its views on the purpose and effect of these limitations. In Cole v. Myers, 100 Neb. 480, 160 N. W. 894, the controversy was between two sureties, one for the depository bank and one for the county treasurer on his official bond, who had made an over-deposit, the total being $13,189.61. The bank's bond was in the penal sum of $10,000. It failed and the surety on that bond promptly paid to the county $10,000 as the amount of its liability, and to that extent procured an assignment of the deposit. Later the surety on the county treasurer's official bond paid the county the balance of the deposit, $3,189.61, took an assignment of that claim and also obtained assignment of the claim for the whole $13,189.-61, which the county treasurer had filed with the receiver of the bank. In considering the respective rights of the two sureties to share in a dividend paid by the receiver on the whole amount of the deposit the court, in referring to the rights of the surety on the depository bank's bond said, after quoting the statute:

"The statute is by construction a part of the depository bond. Blaco v. State, 58 Neb. 557, 78 N. W. 1056. In entering into the contract of suretyship the surety had a right to assume that the treasurer would comply with the statute and limit his deposit to $10,000. The bond was given to protect legal deposits of county funds to the contractual and statutory maximum of $10,000 and not as security for an illegal deposit in excess of that sum." [2] The court further said in that case that the surety on the depository bond was not in any wise responsible for the wrongful act on the part of the county treasurer in making the excess deposit; and that the over-deposits were made in violation of law. That opinion was rendered in 1916. It will be noted that

the court in that case said that the statute here relied upon is a part of the depository bond. We take that to be an announcement of the general principle that the law of the place where a contract is made becomes a part of the contract. That is, the contract is to be construed and its obligations determined according to the law of the place. 2 Williston on Contracts, § 516; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Railroad Companies v. Schutte, 103 U. S. 118, 140, 26 L. Ed. 327; Tennessee Bond Cases, 114 U. S. 663, 688, 5 S. Ct. 974, 1089, 29 L. Ed. 281.

In Re State Treasurer's Settlement, 51 Neb. 116, 70 N. W. 532, 36 L. R. A. 746, the controversy was between the outgoing and incoming State treasurers. The former had made deposits in some of the depository banks in excess of the statutory limitation, and the latter, among other contentions, seems to have insisted that in the settlement between them the full amount of those deposits should be delivered to him in currency. He doubted whether the surety could be held at all for any amount in such instances. In considering the extent of liability of such depositories and their sureties on the bonds which they had given the court said:

"The depository law has fixed the maximum sum which the treasurer shall have on deposit in any bank at the same time at one-half of the amount of the bond executed by the bank. This is a limitation, not only upon the power of the treasurer to deposit, but restricts the bank from demanding a larger sum than one-half of the penal sum named in the bond. Were it not for this limitation, unquestionably a depository bank and the sureties upon its bond would be liable [on the bond] in case of a breach of its conditions, to the extent of the full penalty written in the bond. If the treasurer exceeds his duty by depositing a larger sum in a depository bank than he is authorized by law to do, it does not affect the liability of such bank and the sureties on its bond to repay to the State the sum deposited therein, in strict conformity to the requirements of the depository law, and the accretions thereof."

In State ex rel. v. People's State Bank of Anselmo, 111 Neb. 126, 196 N. W. 912, 198 N. W. 1018, it appeared that the county treasurer of Custer County had on deposit with the depository bank $44,000. Its capital stock was $15,000 and it became insolvent. The State had by statute provided for the creation of a guaranty fund from which depositors in failed State banks should be paid the amount of their claims, and the question was whether that fund was liable for payment of the amount deposited in the bank by the county treasurer in excess of 50 per cent. of the capital stock of the bank. The Act providing for that fund was held to have repealed the requirement of the statute with which we are now dealing, in so far as it exacted bonds from State banks as depositories. The attorney general conceded that the guaranty fund was liable for $7,500 of the $44,000 deposit, being 50 per cent. of the capital stock of the bank. He contended, apparently, that the guaranty fund stood in the place of the surety of the State bank under the prior law, and that $36,500 of the deposit having been made in the bank by the treasurer unlawfully, the guaranty fund could not be held for it. The trial court allowed the full amount of the deposit, to be paid out of the guaranty fund by the receiver. This action was reversed. The Supreme Court said:

"We are of the view that the provisions of section 6193, limiting the amount which a county treasurer may legally deposit in a bank to 50 per cent. of its paid-up capital stock, is still obligatory on the treasurer. This limitation was made for, and serves, a good purpose. If, then, the limitation is still effective, it follows as a matter of course that the deposits made by the treasurer in the bank in excess of $7,500 were in violation of the express terms of the statute. The question then arises whether the guaranty fund is liable for the payment of the excess. The liability of the guaranty fund is somewhat analogous to the liability of a surety or guarantor;"

and it was held that

"The treasurer having deposited the county funds in the bank in violation of precise terms of the law the excess so deposited is not entitled to the protection afforded to depositors by the guaranty law."

There was a dissent by three of the seven Justices. A rehearing was granted and the opinion which we have just considered was vacated and the judgment below affirmed. But the second opinion, found in State ex rel. v. People's State Bank of Anselmo, 111 Neb. 126, 198 N. W. 1018, is based entirely on the court's construction of the guaranty fund statute. That statute contained this:

"No bank which has complied in full with all of the provisions of this article shall be required to give any further security or bond for the purpose of becoming a depository for any public funds, but depository funds shall be secured in the same manner that private funds are secured."

The court said that the guaranty fund statute did not put a limitation on the amount

that might be deposited by a county treasurer in a depository State bank, that there was no limitation on the amount of private funds that might be so deposited and that the Act disclosed a purpose to put the two on the same basis of protection. Nothing is said in the last opinion as to the extent of liability of a surety of a National bank depository under section 6193, to which situation the guaranty fund statute does not apply. Three of the Justices dissented, for the reasons stated in the first opinion; and those reasons and the conclusions therefrom were not rejected as unsound by the other Justices, if the premise on which they were based had been conceded to be tenable; that is, the guaranty fund as to such over-deposits was to be regarded as standing instead of a guaranty bond, under section 6193. From these decisions we think the unavoidable conclusion is, that a surety is not liable for over-deposits made by a county treasurer in excess of any of the limitations fixed in section 6193. The bank is, of course, liable. It accepted the deposits and cannot be heard to say that they were made unlawfully. But the surety was not a party to those transactions. There is no evidence that it even knew of them. Neither the county treasurer nor the bank was its agent in those transactions.

The position taken by the Supreme Court of Nebraska in the cases that have been referred to is reasonable, just and based on sound principle. The Iowa Supreme Court, in Fremont County v. Fremont County Bank, 138 Iowa, 167, 115 N. W. 925, and the Montana Supreme Court, in Yellowstone County v. First Trust & Savings Bank, 46 Mont. 439, 128 P. 596, have expressed in substance the same views and conclusions. But on this question it is enough for us to know that the Supreme Court of the State has held that the limitation on deposits in section 6193 is to be read into the innocent surety's obligation. [3] The contention on the second point is that the Nebraska statute classifies the fee to be allowed to plaintiff's counsel as costs, and directs that it be taxed as costs against the defendant; and that the Supreme Court of Nebraska, in construing this statute, holds that this fee is a part of the costs in the case, and not a part of defendant's contractual liability as such; and that the Federal statute makes provision for allowance of attorney fees in civil cases, to be taxed as costs, and that Congress having legislated on the subject, the Federal court must apply the Federal statute to the exclusion of the State statute on the same subject. Taking up first the State statute, Comp. Stat. Neb. 1922, § 7811, it reads as follows:

"In all cases where the beneficiary, or other person entitled thereto, brings an action at law upon any policy of life, accident, liability, sickness, guaranty, fidelity or other insurance of a similar nature, or upon any certificate issued by a fraternal beneficiary association, against any company, person or association doing business in this state, the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs, and if such cause is appealed the appellant court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings."

This statute was considered by the State Supreme Court in Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co., 98 Neb. 27, 151 N. W. 942, and (on rehearing) 98 Neb. 863, 155 N. W. 235. In that case the surety on a contractor's indemnity bond was sued on the bond on account of the principal's default, along with the principal. The trial court refused to allow to plaintiff an attorney's fee to be taxed as costs. The statute under consideration was passed after the contract and bond were entered into, and the surety contended that because of that fact compensation to plaintiff's counsel as attorney's fee in the case could not be taxed against the surety. The supreme court in its first opinion acceded to this contention and affirmed the ruling of the trial court. On reargument it reached a contrary conclusion, reversed the action of the trial court and directed that a reasonable allowance be made as a fee to the plaintiff's attorney and that it be taxed as part of the costs. It held that the statute applied to contracts and obligations entered into prior to the passage of the statute as well as to those made thereafter. The court in reaching its final conclusion adhered strictly to the terms of the statute which made the attorney's fee a part of the costs in the case, to be taxed as such, and said that this related only to the remedy and did not create and add to the contractual liability of the defendant nor in any way change the contract or the liability thereon. This ruling was followed in Ward v. Bankers' Life Ins. Co., 99 Neb. 812, 157 N. W. 1017, and in Reed v. American Bonding Co., 102 Neb. 113, 166 N. W. 196, L. R. A. 1918C, 63. In the Reed Case it appeared that the contract of insurance sued on was made before the statute was enacted, and it was insisted by defendant that to apply the statute in such a case would result in an impairment of the obligation of the contract. The court said the point had been fully considered in prior cases and that

"The decisions in these cases are based upon the proposition that the statute affects the remedy only, and to change the taxation of costs, even if it results in increasing the amount of costs, does not change the liability provided for in the contract, but only affects the method of enforcing that liability. If the contract is complied with, no costs are taxed against the company. If litigation becomes necessary to determine the liability, the costs result from the litigation, and not from any construction of the contract."

This, then, is not a statute affecting the contractual rights and liability of defendant, but one on the subject of costs only.

We turn to the Federal statute on the same subject. R. S. §§ 823, 824 (U. S. Comp. Stat. §§ 1375, 1378). The first of these sections provides:

"The following and no other compensation shall be taxed and allowed to attorneys, solicitors, and proctors in the courts of the United States. * * * But nothing herein shall be construed to prohibit attorneys, solicitors, and proctors from charging to and receiving from their clients, other than the Government, such reasonable compensation for their services, in addition to the taxable costs, as may be in accordance with general usage in their respective States, or may be agreed upon between the parties."

The second section fixes the amounts to be respectively taxed. As to fees of attorneys:

"In cases at law, when judgment is rendered without a jury, ten dollars."

This statute was originally enacted February 26, 1853 (10 Stat. 161), and the two sections, as we now have them in the revision, were included in one section.

[4] It is the general rule that where Congress has not regulated the subject of costs, the Federal courts will follow the State statutes on the subject and award to the parties the costs to which they would be entitled if the litigation were in the State court where the Federal court is sitting. Scatcherd v. Love (C. C. A.) 166 F. 53; Shreve v. Cheesman (C. C. A.) 69 F. 785. This rule is in recognition of the provisions of R. S. § 721 (U. S. Comp. Stat. § 1538), which reads:

"The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

In The Baltimore, 8 Wall. 377, 19 L. Ed. 463, it was held that under the Act of February 26, 1853, "attorneys, solicitors, and proctors may charge their clients reasonably for their services, in addition to the taxable costs, but nothing can be taxed as cost against the opposite party, as an incident to the judgment, for their services, except the costs and fees therein described and enumerated." In United States v. Sanborn, 135 U. S. 271, 282, 10 S. Ct. 812, 816 (34 L. Ed. 112) the court said:

"The whole subject of fees in the courts of the United States is regulated by chapter 16, title 'Judiciary,' of the Revised Statutes. By section 823 it is provided that the fees allowed in that chapter, and no other 'compensation' shall be taxed and allowed in the courts of the United States, to the officers therein named and to witnesses, except in cases otherwise expressly provided by law; leaving attorneys, solicitors, and proctors to charge and receive from their clients, other than the Government, such reasonable compensation for their services, in addition to the taxable costs, as may be in accordance with general usage in their respective States, or as may be agreed upon between the two parties."

In Ex parte Peterson, 253 U. S. 300, 40 S. Ct. 543, 64 L. Ed. 919, the right to tax allowances for the services of an auditor appointed in a law case was under consideration. The court said that the Act of February 26, 1853, did not deal expressly or by implication with the subject of taxing as costs expenses of an auditor, and inasmuch as there was no Federal statute regulating the subject, the rule and practice prevailing in the State court might be followed. See also Day v. Woodworth, 13 How. 363, 14 L. Ed. 181; In re Paschal, 10 Wall. 483, 19 L. Ed. 992; Flanders v. Tweed, 15 Wall. 450, 21 L. Ed. 203; Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; United States v. Waters, 133 U. S. 208, 212, 10 S. Ct. 249, 33 L. Ed. 594; Michigan Aluminum Foundry Co. v. Aluminum Co. of America (C. C.) 190 F. 903.

Counsel for defendant in error relies upon Williamson v. Liverpool & London & Globe Ins. Co. (C. C. A.) 141 F. 54, 5 Ann. Cas. 402, and Spring Garden Ins. Co. v. Amusement Syndicate Co. (C. C. A.) 178 F. 519, in each of which the plaintiff below was permitted to recover an allowance as an attorney's fee against the defendant. In the Williamson Case the State statute did not allow the recovery, so far as the opinion discloses, as a part of the costs to be taxed in the case, but it provided that such a fee might be recovered in event the insurer vexatiously refused to pay in accordance with its obligations. This is compensatory damages. In the Spring Garden Insurance Company Case the Kansas statute did provide that the attorney's

fee was to be recovered as a part of the costs. But that was a suit in equity, and sections 823 and 824 were not controlling.

For the reasons stated we think both points were well taken and the court erred in law in not sustaining them. The judgment was excessive and attorney's fees cannot be taxed against defendant. Reversed with direction to set aside the judgment and vacate the order taxing plaintiff's attorney's fees against defendant as a part of the costs and that the court proceed to dispose of the case in accordance with the views herein expressed.