54   555
61   246

PAUL VAN VLISSINGEN vs. BOARD OF COUNTY COM'RS OF CLAY COUNTY.

Argued June 6, 1893.   Reversed Sept. 8, 1893.

### Security for County Funds Deposited in Banks.  ·

The statute requires that banks designated by the board of auditors of a county as depositories of the funds collected by county treasurers shall secure deposits to a specified amount by bonds, with sureties, approved by the county commissioners. No other or different security is contemplated as a condition of receiving such deposits. It will not be presumed that the county board will accept other security in lieu thereof.

### Incomplete Delivery and Acceptance.

An assignment of a mortgage to a county, voluntarily made by a bank holding deposits as one of the designated depositories of the county funds, and placed in the hands of the county attorney, and intended as further security generally for deposits accrued, and which might accrue, to and beyond the bond limit, *held* ineffectual as a delivery to the intended assignee, or as a transfer of the security, as against a subsequent assignment of the bank, which took effect before the actual delivery to or acceptance by the county board of the assignment first mentioned.

Appeal by plaintiff, Paul van Vlissingen, from an order of the District Court of Clay County, *Ira B. Mills*, J., made December 26, 1892, denying his motion for a new trial.

H. A. Bruns and Thomas C. Kurtz were partners at Moorhead, doing business as bankers under the name Merchants Bank of Moorhead. They gave bond and received on deposit the money of Clay County. Kurtz was chairman of the Board of County Commissioners. In October, 1891, some question was made as to the safety of money on deposit, belonging to the county. Kurtz thereupon handed to W. B. Douglass, County Attorney, a note and mortgage for $6,000 made by the Moorhead Manufacturing Company, and $2,000 of the stock of the Red River Valley Investment Company, as additional security to the county for the payment of its deposits. Douglass put the stock and securities in an envelope and left them in the safe of the firm in the bank. They remained there until sometime in January, 1892, when they were taken out by the County Attorney. On February 10, 1892, Bruns and Kurtz had on deposit over $20,000 of the money of the county. They were on that day adjudged insolvent and the plaintiff was appointed receiver of their

property. This appointment seems to have been made by the District Court under Laws 1881 ch. 148, on the petition of some creditor. After this the County Attorney delivered the stock and securities to the County Auditor and reported the facts to the Board. Prior to doing this he had no instructions or authority from the Board to act for it or to obtain security. The board authorized the County Attorney to sell the note, mortgage and stock and deliver the proceeds to the County Treasurer. Before this was accomplished, the plaintiff as such receiver brought this action of replevin against the Board of County Commissioners to obtain the possession of the stock and securities. More than ninety days elapsed after the stock and securities were so delivered by Kurtz to the County Attorney, before the insolvency proceedings were commenced against Bruns and Kurtz.

The issues were tried July 27, 1892, before the court without a jury. Findings were made that the County owned the stock and securities and was entitled to their possession, and judgment was ordered that they be returned to it, and if a return could not be had, that it recover of plaintiff their value. The trial court in a note expressed the opinion that the County, as creditor of Bruns and Kurtz, had the right to obtain additional security for the debt and that the delivery of the stock and securities to the County Attorney in October, 1891, passed the title to the County.

*C. A. Nye* and *Brooks & Hendrix,* for appellant.

The statutes of this state confer no authority or capacity upon a county, under any circumstances, to acquire chattels of the kind in controversy. *Shepard* v. *County of Murray,* 33 Minn. 519; *Williams* v. *Lash,* 8 Minn. 496; *Shelley* v. *Lash,* 14 Minn. 498.

By Laws 1860, ch. 15, § 2, the statute was so amended as to authorize the county to purchase and hold real and personal estate for the use of the county, and lands sold for taxes as provided by law. One purpose of this amendment was apparently to place real estate and personal property upon the same footing, as respects their acquisition or ownership by the county. *James* v. *Wilder,* 25 Minn. 305.

By Laws 1864, ch. 23, the law was again amended so as to read in its present form, as found in 1878 G. S., ch. 8, § 83. Each organ-

-ized county within this state is empowered to purchase and hold real and personal estate for the use of the county, and lands sold for taxes, as provided by law, and to purchase and hold for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff. Under the statute as so amended, a county cannot for any purpose acquire title to a mortgage or corporate stock. Such property could never be considered as held for the use of the county.

Our statutes prescribe the method whereby the treasurer may lawfully deposit the county moneys and relieve both himself and his sureties from responsibility concerning the same. 1878 G. S., ch. 8, §§ 150, 153; Laws 1883, ch. 51; Laws 1881, ch. 124.

A depository can only be lawfully appointed upon compliance with these statutory prerequisites. The depository cannot be designated or the amount it is authorized to receive enlarged by the County Commissioners alone, either individually or as a board. And, inasmuch as the action of both the Board of Auditors and the Board of County Commissioners in the selection and designation of depositories and the acceptance and approval of the security calls for the exercise of discretion and discrimination, it is clear that the powers of these boards in these particulars cannot be delegated to individual members of the boards or to any other official or person. *Commissioners of Hennepin Co.* v. *Robinson*, 16 Minn. 381; *Darling* v. *City of St. Paul*, 19 Minn. 389; *In re Wilson*, 32 Minn. 145; *Minneapolis Gas Light Co.* v. *City of Minneapolis*, 36 Minn. 159.

If then the County Attorney had no power to take security for the county deposits in this bank, it follows that defendant's claim of title to these chattels rests entirely upon the action of the Board of Commissioners taken subsequent to plaintiff's appointment as receiver, either by way of ratification of the unauthorized act, or by the acceptance of the security previously attempted to be given. It is a conclusive answer that plaintiff had previously been appointed receiver. Whatever might be the power of the county to accept security in addition to the statutory bond, it could not lawfully receive any security different in kind, in place of such bond. But this is what the Attorney assumed to do in its name. The bond of the depository bank did not exceed thirty thousand dollars and it could not lawfully receive more than fifteen thousand dollars

of the county funds. It appears from Mr. Douglass' testimony that in the month of October he had a conversation with Kurtz in which it was in substance agreed that in lieu of increasing the amount of the bond rendered necessary if the deposits were allowed to increase, Kurtz would fix up a package of securities. And pursuant to this conversation the papers in question were handed to the County Attorney. There is no evidence tending to contradict this testimony of Mr. Douglass and it was pursuant to the agreement here disclosed that the papers were handed to the Attorney. The purpose was not to secure funds already deposited. They were supposed to be safe by all parties.

*W. B. Douglass* and *Davis, Kellogg & Severance*, for respondent.

*Williams* v. *Lash*, 8 Minn. 496 and *Shelley* v. *Lash*, 14 Minn. 498 are substantially overruled in the case of *Shepard* v. *County of Murray*, 33 Minn. 519. Upon reason and authority, where the county has the express power to create a debt or obligation, such as a treasurer's bond, and the power to sue and collect such debt, it should have the power to take money or property in payment or security of that debt, if such action is necessary to save the county from loss. The county did not accept this mortgage as a purchase, but only as collateral security in addition to the bond. *Breen* v. *Kelly*, 45 Minn. 352; *Richards* v. *Osceola Bank*, 79 Iowa 707.

The power existed in the county to accept additional security and this cannot be successfully assailed. The only question is, must the law officer of the county call together in special session the Board of County Commissioners to accept securities given solely for the benefit of the county. Such a position would be absurd.

But if it should be held that the County Attorney had no authority to accept this assignment for the benefit of the county, still there was a sufficient delivery even upon the technical rules governing the delivery of deeds of real estate, for it is well settled that a deed delivered to one party for the benefit of another, with intention that it shall take effect immediately, does so, although the party receiving it had no authority and it was without the knowledge of the grantee. The deed being manifestly for the benefit of the grantee, an acceptance would be presumed until an actual dissent is proven and the burden is upon the grantor to show a dissent.

*Holcombe* v. *Richards*, 38 Minn. 38; *Read* v. *Robinson*, 6 Watts & S. 331; *Church* v. *Gilman*, 15 Wend. 656; *Tompkins* v. *Wheeler*, 16 Pet. 113; *Adams* v. *Adams*, 21 Wall. 185; *Lee* v. *Fletcher*, 46 Minn. 49; *Fenton* v. *Miller*, 94 Mich. 204.

It is claimed by the appellant that the acceptance of these securities was an absolute violation of the law and therefore void, in that the bond of the bank was only $25,000 or $30,000 and that the securities were accepted under an arrangement to increase the deposit in excess of that allowed by the bond. The deposit was upward of $20,000, and the bond was duly given, and the bank duly designated, and the bond was in the usual form. This is not overcome by the statement of Mr. Douglass that he thought the bond was somewhere from $25,000 to $30,000, but he could not say. The additional securities were taken because there was a large amount of money being deposited, and the question was raised whether the bond was sufficient, i. e., whether the sureties were good. There is nothing to show that the county did not take this as additional security on the ground that the sureties were not good. The statutes in this state authorize the county commissioners at any time to demand an additional bond and if the sureties are not good to insist on additional sureties; hence, there is no evidence that there was any violation of law in this case.

But there is another reason why this assignment cannot be questioned, and that is that the assignee is estopped. An assignee only represents the debtor except as the statute gives him power to assail conveyances fraudulent as to creditors. Certainly, this is not a conveyance that a creditor could avoid. The bank did not make it to defraud anyone; and the bank received and retained county money deposited in reliance upon it. The bank would be estopped to deny the validity of the transfer which was made, and so is the plaintiff, its assignee. *Argenta* v. *San Francisco*, 16 Cal. 255; *Nelson* v. *Mayor*, 63 N. Y. 535; *Commissioners of Hennepin Co.* v. *Robinson*, 16 Minn. 381; *Kelly* v. *State*, 25 Ohio St. 567; *Hough* v. *Cook County Land·Co.*, 73 Ill. 23; *Whitney* v. *Robinson*, 53 Wis. 309.

VANDERBURGH, J.   The plaintiff was appointed receiver of Thomas C. Kurtz and H. A. Bruns, who were together operating a bank at

Moorhead as partners, under the name of the Merchants' Bank of Moorhead, and sues to recover from the county certain securities claimed to be part of the assets of the insolvent bank,—a mortgage for $6,000, and 20 shares of corporate stock. This bank was the lawful depository duly designated of the county funds, and its bond as such, in the penalty of $25,000 or $30,000, (it does not distinctly appear which,) was approved by the county board on or about February 10, 1891, and from that date to the appointment of the receiver the bank held funds of the county averaging $15,000, increasing in the fall of 1891 to the sum of $20,000 or more, which indebtedness continued when the insolvency proceedings were instituted. The bank was the owner of the securities in question, and the defendant claims to have acquired the same as additional security for the indebtedness of the bank on account of the deposit of the public funds therein; and whether there was a seasonable delivery to and acceptance thereof by the defendants, as against the claim of the receiver, is the principal question in this case, and the one upon which it was decided in the court below.

The county treasurer and his bondsmen are primarily absolutely liable for the safe-keeping of the public moneys coming into his hands, and, except upon the terms and conditions allowed by the statute, he has no authority to deposit the same in banks or with any person or firm. Statutory provisions are made for designating a depository, upon compliance with which the treasurer may relieve himself and sureties from liability for the safety of the moneys deposited. The designation of a depository, which is to be some bank, is made by the board of auditors of the county, which consists of the chairman of the board of county commissioners, the county auditor, and clerk of the district court. The statutory provisions for the selection and designation of depositories are found in 1878 G. S. ch. 8, §§ 150–153; Laws 1881, ch. 124; Laws 1883, ch. 51; Laws 1887, ch. 84. It will be observed by reference to the statutes mentioned that, as a condition precedent to the lawful deposit of the public funds by the county treasurer, a bond is to be executed and deposited with the treasurer, signed by five freeholders, and approved by the board of county commissioners, and the bond is to be in an amount at least double the amount of the funds to be deposited with such bank. The bond is to run two years, but if the

board of auditors, at any time after having made such designation, for good and sufficient cause, deem the security given insufficient, it may require a new bond, and if, in its opinion, the public interest requires it, may vacate, revoke, or modify its designation of a depository in any way. The designation requires the exercise of the judgment of the board of auditors, and the acceptance and approval of the bond requires that of the board of commissioners, and the nature of the security is specifically pointed out by the statute. Its provisions are mandatory. It is thereby expressly "made the duty of the officers designated and also of the board of county commissioners to comply with all the provisions of this act." Laws 1881, (Ex. Sess.) ch. 43, § 1.

The kind of security which a bank is required to give as a condition of receiving a deposit of funds from the county treasury must be of the character above described, and neither the board of auditors nor the board of commissioners have any discretion or authority under the statute to accept any other; and the deposit is not permitted to exceed one-half of the amount of the bond. The facts are not specifically found by the court, but the court (a jury having been waived) finds generally that the defendant is the owner of the securities, on the ground, as appears from the memorandum annexed, that they were assigned to the defendant before the rights of the plaintiff attached, and that a delivery to the county attorney was of itself sufficient. Kurtz, who was one of the partners and managers of the bank, was also chairman of the board of county commissioners, and ex officio a member of the board of auditors. The following facts were stipulated at the trial: "That, at the commencement of this action, the board of commissioners of Clay county claimed the securities in question, and still claim them, and that they claim the ownership of them by reason of a transfer, assignment, or delivery from Thomas C. Kurtz to the county attorney, who claimed to act for and in behalf of the county in regard to the transaction. It is further stipulated that no record of any kind was or has been made of any action on the part of the board of county commissioners either demanding or asking for the securities in question, or instructing any person to obtain these securities for the benefit of the county, except that the board of county commissioners of Clay county, during the month of February, 1892, and subse-

v.54m.—36

quent to the appointment of the plaintiff as receiver of the property of the Merchants' Bank of Moorhead, authorized W. B. Douglas, county attorney of Clay county, to sell and transfer the property replevined in this action at a price to be not less than the face value thereof, and, subsequent to the beginning of this action, authorized and directed the county attorney of Clay county to resist this action, and procure, if possible, judgment of this court returning the same to the board of commissioners of Clay county."

It also appears from the evidence of the county attorney, which is not disputed, that, previous to the assignment of the securities by Kurtz in behalf of the bank, he consulted with the county attorney in respect to furnishing additional security to the county, and suggested that, inasmuch as the deposits were increasing, it might be better to turn over securities of the bank to the county, instead of raising the bond, and it might be necessary to raise the bond unless this was done; and he said he would fix a package for the county attorney, which was done, and afterwards delivered to him, who delivered it to the county auditor after the failure of the bank, and then reported the matter to the county board, which thereupon ordered the sale.

Conceding, without stopping to consider or discuss, the question that, as between the county and the bank and its assignee, the county might hold and enforce these securities, if a seasonable and completed transfer had been made, there are very good reasons why the delivery to the county attorney was insufficient in this case to effect such transfer. The evidence tends very strongly to prove that the assignment was intended to secure a contemplated excess of deposits over and above the amount which the bank was entitled to receive by virtue of its bond. Such an arrangement the law will not sanction. And it will not be presumed that the board of county commissioners would have accepted the securities for such purposes.

And it is not at all clear that the bank would have consented to any other arrangement. It was not a matter for the county attorney to determine or act upon. As to additional deposits, the statute referred to points out the authority and the procedure; and, if the proposition was general and uncertain in its character, then it should, at least, have been brought before the board itself, that its

purpose and propriety might have been inquired into, and the proper official action taken. In dealing with the depositories, any other rule would tend to encourage looseness and irregularity in the management of the county finances, which it is very clear the legislature intended sedulously to guard against.

The court will not therefore, in this case, presume an acceptance of the assignment on the voluntary delivery of the securities to a third person. Besides, there is not the slightest intimation in the evidence, as there can be no presumption in law, that the county was not already abundantly secured by the bonds which the law requires in such cases. It is not, we think, a case for the application of the rule contended for.

Order reversed.

(Opinion published 56 N. W. Rep. 251.)