BOARD OF COUNTY COMMISSIONERS OF RENVILLE COUNTY v.
FINLEY A. GRAY and Others.[1]

June 3, 1895.

Nos. 9154–9156—(29–31).

Bond—Material Alteration—Release of Sureties.

A firm engaged in banking was designated a depositary of the public funds of the plaintiff county, and gave a bond to secure the county deposits, in which the persons composing the firm were principals, and their codefendants herein sureties.    The penal sum named in the bond, when it was signed by the sureties, and intrusted to one of the principals, to be delivered to the county, was $20,000, but before it was delivered the penal sum was changed by him to $21,500, without the knowledge or consent of the sureties, and without fraudulent intent on his part.    He delivered the bond, as changed, to the county, and it was accepted and approved by its proper officers, and the funds of the county deposited with the firm, without any knowledge on the part of any officer of the county that it had been so changed.    The assessment for taxation of the property of the firm and of the persons composing it,

[1] Reported in 63 N. W. 635.

not exempt by law, was in the aggregate amount less than one-half of the penal sum named in the bond before the change therein was made. *Held* to be a material alteration, which discharged the sureties.

#### Same—Knowledge of Sureties—Estoppel.

Two of such sureties learned of such alteration of the bond shortly after it was made, and before the deposits sought to be recovered in this action upon the bond were made, but they did not repudiate such bond, or give any notice to the county or any of its officers that the bond had been so changed. *Held,* that they were equitably estopped from asserting such alteration as a defense to this action; and, further, that the evidence was sufficient to sustain the verdict against them on this ground, but not as to two other defendants against whom a similar verdict was returned.

#### Action on Bond to Secure County Deposits—Evidence.

The plaintiff did not prove on the trial that the board of auditors duly advertised for proposals for the county deposits, that the proposal made by the depositary was in the form prescribed by the statute, that the depositary possessed the requisite property qualifications, and that the bond was deposited with the county treasurer. *Held,* that proof of such facts was not essential to the plaintiff's right to recover on the bond, it appearing that the depositary was in fact designated by such board, and the deposits made pursuant to such designation.

Action in the district court for Renville county by the board of county commissioners of Renville county against Finley A. Gray and Joseph A. Beard, copartners as the Bank of Fairfax, and others. The jury rendered a verdict for $1,876.16 against defendants Gray, Beard, Martin D. Brown, Henry Hauser, Horatio Werring and Matthew Welter, and in favor of the other defendants. The court, Webber, J., made an order granting motions of defendants Brown and Hauser for a new trial; denying motions of defendants Werring and Welter for a new trial; and denying a motion of plaintiff for a new trial against the defendants in whose favor the verdict had been rendered. From the order, so far as it denied its motion for a new trial and also so far as it granted a new trial as to defendants Brown and Hauser, plaintiff appealed. From the order, so far as it denied their respective motions for a new trial, defendants Welter and Werring appealed. Affirmed.

*H. W. Childs, George B. Edgerton,* and *S. R. Miller,* for plaintiff, appellant and respondent.

*McClelland & Tifft,* for defendants, appellants and respondents.

START, C. J.   Action against Finley A. Gray and Joseph A.
Beard, as principals, and their codefendants, as sureties, upon a bond
to the board of county commissioners to secure the payment of pub-
lic funds deposited with Gray and Beard, who were copartners
under the name of the Bank of Fairfax.   This firm was designated
by the county board of auditors a depositary of the public funds,
but they became insolvent, and refused to pay, on proper demand,
a balance of $1,743.30 due to the county on account of public funds,
and interest thereon, deposited with them.

The sureties only answered.   They denied the allegations of the
complaint, and alleged that they executed a bond to the county in
the penal sum of $20,000, and no more; but that, without their
knowledge or authority, the penal sum in the bond was changed to
$21,500 by Gray and Beard, before it was delivered to the county.
It was proved upon the trial, and is practically admitted, that after
the bond had been signed by all parties, including the sureties, and
intrusted to Gray, to be delivered to the county, he, without the
knowledge or consent of the sureties, made the change in the penal
sum of the bond by raising it from $20,000 to $21,500, and delivered
it to the county commissioners, who, without any knowledge of the
change, approved and accepted it.   The evidence also tends to show
that Gray made the change without any fraudulent intent, and, fur-
ther, that at least two of the sureties, after they learned of the
change, ratified it.

A verdict was returned against the principals and the sureties,
Brown, Hauser, Werring, and Welter, and in favor of all of the
other defendants; and as against the latter the plaintiff made a
motion for a new trial, and from an order denying the same it ap-
pealed.   The defendants against whom there was a verdict, sev-
erally made a motion for a new trial, which was granted as to
Brown and Hauser, and from this order the plaintiff also appealed.
The motion was denied as to Werring and Welter, and from such
order they appealed.

1. The plaintiff claims that the alteration of the bond did not
change or affect the liability of the sureties, and therefore was not
a material alteration.   If the premises of this proposition are unas-
sailable, and the identity of the bond was not destroyed by the
change, the conclusion is correct, for an alteration of a written con-

tract must either destroy its identity or change the contract in some essential particular, in order to be material and avoid it. Herrick v. Baldwin, 17 Minn. 183 (209). The statute (G. S. 1894, §§ 729, 730) provides that the amount which shall be deposited in any bank or banking house shall not exceed the assessed capital stock of such bank or banking house, or, in case of private bankers, the assessed value of the property, not exempt, of the individual members of the banking firm, as shall appear on the tax lists of the county; and the treasurer is required from time to time to take notice of any changes in the assessment of the depositary, and limit the amount of the deposits by such changes in accordance with the provisions of the law. The amount of the bond is required to be double the amount of the funds to be deposited.

Here are two limitations as to the amount which may be deposited. One is measured by the amount of the assessment, the other by one-half of the amount of the bond. The deposit is not to exceed the assessment nor one-half of the amount of the bond. The bond runs for two years, and the board of auditors may change the amount to be deposited with a depositary, and require a further bond if necessary. The assessment of the individuals composing the banking firm may change during that time, and if it increases there is no reason why the board of auditors might not, if the assessment justified it, increase the amount to be deposited to a sum equal to one-half of the amount of the bond. In such case the liability of the sureties on the bond in question would or might be increased by one-half of the increase in the penal sum of the bond or $750. Again, the limitations relate to the amount of the original deposits, and not to the accrued interest thereon; but the bond secures the interest as well as the deposits, and cases might arise where the sureties, by a change in the amount of their bond, would be held on account of accumulated interest for the payment of a larger sum than they could have been called on to pay if the change had not been made. An alteration of a contract is material if the liability of a party may be changed thereby; and, as we have indicated, the liabilities of the sureties might have been changed by an alteration in the penal sum of this bond. But we deem it proper to place our decision of this question upon a broader ground.

The plaintiff claims that, inasmuch as the assessment of the de-

positary, as it offered to prove it, was less than one-half of the penal sum of the bond before it was increased, the liabilities of the sureties could not be increased by the change. This necessarily implies that if the treasurer, by mistake or by collusion with the depositary, deposits with him a sum in excess of the amount of his assessment, the sureties on the bond are not liable for such excess. Such a construction would, in practice, imperil the safety of the public funds in the several county depositaries of the state, and defeat in a measure the manifest object of requiring a bond to be given, which is to secure the payment on demand of all public funds, and the interest thereon, placed in such depositaries. The depositary is one of the financial agents of the county, and his bond is intended to secure his fidelity as such agent, and the sureties undertake that he will be faithful to the trust, and pay and account for the public funds coming to his hands as such agent on demand, and their liability is not conditional on the fidelity of some other agent of the county,—in this case the county treasurer,—for their contract is to indemnify the county in a sum not exceeding the amount named in their bond.

The fair and reasonable construction of the statute is that the limitations imposed upon the treasurer as to the amount of the deposit are intended for the benefit of the public, not for the protection of the sureties. They protect themselves by fixing a limitation in their contract beyond which they will not be liable. The law undertakes, in addition to the bond, further to safeguard the public funds by placing limitations upon the authority of its officers in depositing such funds with its designated financial agent; and although the former, by mistake or otherwise, disregard the limitations, yet the latter holds the excess as such agent by virtue of his designation as a depositary of the public funds. When suit is brought on his bond to recover such funds, neither he nor his sureties can be exonerated from liability for any part of the public funds deposited with him, because the treasurer did not observe the limitations of the law. They are bound for the payment of the full amount of the deposit, although they may exceed the depositary's assessment. 2 Brandt, Sur. §§ 555, 556.

This court, in the case of Van Vlissingen v. Board of County Commrs., 54 Minn. 555, 56 N. W. 251, expressly recognized this rule.

In the case cited the amount of the bond of the depositary did not exceed the sum of $30,000, and under such a bond deposits were made to an average amount of $20,000, and the court says: "There is not the slightest intimation in the evidence, as there can be no presumption in law, that the county was not abundantly secured by the bonds which the law requires in such cases."

2. It is further claimed by the plaintiff that the alteration in the bond did not render it void, because the change was not made by one claiming a benefit under it, and was made without any fraudulent intent. This proposition is urged with ability by counsel for the plaintiff, and he fortifies his position by a reference to many adjudged cases, but most of them are cases where the change was made by a stranger to the contract, without authority.

Such, however, is not the case at bar, for the change was made by one of the obligors in the bond, without the consent of his co-obligors, and it is not clear but that he might have derived a benefit from the change. A material alteration by one of the obligors without the consent of his co-obligors, and without the privity of the obligee, discharges the other obligors, for the identity of the instrument is destroyed by the change; and to enforce it against the obligors who did not assent to the change would be to enforce against them a contract they never made; and to permit the obligee, who received the altered instrument without knowledge of the change, to recover on the instrument as it was originally, would be to give him the benefit of a contract which he never made or accepted. Wood v. Steele, 6 Wall. 80; Draper v. Wood, 112 Mass. 315; Greenfield Bank v. Stowell, 123 Mass. 196. This question is not an open one in this state, for it was settled adversely to the plaintiff in the case of Flanigan v. Phelps, 42 Minn. 186, 43 N. W. 1113.

3. The case of the defendants Brown and Hauser differs from that of their codefendants in whose favor a verdict was returned only in that it is claimed by the plaintiff that there was evidence in the case tending to show that they had ratified the alteration, and were equitably estopped from asserting the change as a defense, and that for this reason the verdict against them was right. The trial court was of the opinion that the evidence was not sufficient to justify such a verdict, and granted these defendants a new trial. This was

correct, for practically there was no evidence of a ratification of the alteration by these defendants, or of any act or omission on their part which would estop them in the premises.

4. As to the defendants Werring and Welter the trial court denied their motion, for the reason that the evidence was sufficient to justify the jury in finding a ratification and estoppel as to them. The ruling was correct. The evidence was conflicting, but there was evidence in the case tending to show that the defendant Welter, the last surety to sign, assented to the change, and that both of these defendants learned within a short time after the bond was delivered, and before the deposits here in question were made, that the alteration in the penal sum had been made; but neither of them informed the plaintiff, or any of its officers, of the change, or objected thereto. There is no evidence that the conduct of the plaintiff was influenced by their silence, but it will be presumed, for the presumption is that the board of auditors would have done their duty, and required a new bond, if they had been informed that the bond in question had been materially altered. G. S. 1894, § 729. The defendants are presumed to have known the law, yet they remained silent, and permitted the county to deposit its funds with the depositary in reliance on the altered and void bond. If a party is silent and fails to speak when the facts and circumstances of the case make it his duty to speak, and the opposite party is misled thereby to his injury, he is equitably estopped from asserting the existence of the fact which he ought seasonably to have disclosed. Dimond v. Manheim, supra, p. 178, 63 N. W. 495.

5. The principals in the bond were in fact designated a depositary of the county funds, and they were deposited with them by reason of such designation; but it is claimed by these defendants that such designation was not made in accordance with the statute, and was void for the reason that there is no evidence that the board of auditors advertised for proposals, or that the proposal acted upon conformed to the statutory requirements, or that the depositary possessed the requisite property qualifications; and that for these reasons the bond was void. These requirements of the statute are matters of detail for the benefit of the public, and not for the sureties. The only purpose of advertising for proposals and receiving them is to secure competition, and the highest rate of interest com-

patible with the security of the funds.     The sureties had no right to rely upon any investigation of the financial responsibilities of their principals by the county officers, for the very object in taking the bond was to insure such responsibility.     The sureties trusted the integrity and pecuniary responsibility of their principals, and the county relied upon the obligation of the sureties.     2 Brandt, Sur. § 518.     The bond in question, after it was accepted and approved, was filed and recorded in the office of the register of deeds, instead of being deposited with the county treasurer.     This cannot affect the liability of the surety, for when the bond was approved its delivery was complete, and the rights and obligations of the parties fixed, and thereafter it was no concern of the sureties where the bond was kept.

6. The other assignments of error by these defendants have been examined, and found to be without sufficient merit to justify any discussion of them.

Orders affirmed.