FREMONT COUNTY, IOWA, Appellant, v. FREMONT COUNTY
    BANK, J. H. McDONALD, CLARK CAREY, JERRY LOCK-
    ET, A. V. PENN, C. J. EDSEN, Appellees.

**Suretyship:** LIABILITY FOR COUNTY DEPOSITS. Although county funds
1  are deposited prior to approval of the bond filed by the bank
   as provided by Code, section 1457, a subsequent approval of the
   bond with authority to the treasurer to deposit not exceeding a
   certain amount, will render the bond liable for the funds on de-
   posit at the time of such approval or subsequently deposited, not
   exceeding the amount of the authorized deposit.

**Same.** The sureties on a bond given by a bank to secure the deposit
2  of county funds are only liable to the extent of the deposit au-
   thorized by the supervisors, and not for the full penalty named
   in the bond, whether the bond was valid when filed or validated
   by a subsequent resolution of the board.

**Same.** Sureties on a bond given to secure the deposit of county
3  funds are not liable for the loss of funds through the insolvency
   of the bank prior to assuming the obligation; but where the
   evidence shows that at the time the liability attached the bank
   was a going concern and had not refused payment, although in
   somewhat embarrassed circumstances, the sureties cannot rely on
   a prior loss of the funds to relieve their liability.

**Same:** APPLICATION OF PAYMENT. The usual rule that where neither
4  debtor nor creditor has made an application of payments the
   same will be applied to the earlier rather than the later accounts,
   applies to sureties on a bond given to secure the deposit in a
   bank of county funds.

*Appeal from Fremont District Court.*— HON. W. R. GREEN,
Judge.

THURSDAY, APRIL 9, 1908.

ACTION at law upon a bond given by defendants to hold
the plaintiff's county treasurer harmless from all loss by rea-
son of deposits made by him in the Fremont County Bank.
The case was tried to the court without a jury, resulting in

a small judgment for plaintiff, and plaintiff appeals.— *Reversed.*

*W. H. Norcutt, County Attorney,* and *T. S. Stevens,* for appellant.

*W. E. Mitchell* and *William Eaton,* for appellees.

DEEMER, J.— On January 4, 1904, pursuant to previous election, H. C. Byars became treasurer of Fremont county, succeeding H. E. Hawley, the retiring treasurer. Hawley had, during his term of office, deposited county funds in the Fremont County Bank, and these funds were secured by a bond similar to the one upon which this action is bottomed; one of the sureties upon this bond having signed the previous one.  Plaintiff's board of supervisors made a settlement with the retiring treasurer, Hawley, and found that he had on deposit in the Fremont County Bank on January 5, 1904, a balance of $1,095.99.  Hawley thereupon made his check for that amount to Byars, his successor, and upon the 7th of that month, and after the bond in suit was given, Byars turned his check back into the bank receiving credit therefor, and later made deposits amounting to $686.70.   The treasurer drew out all but $1,348.89 of the amount of these deposits, and, owing to financial difficulties of the bank, was unable to get this balance. Failing to get it, this action was brought, which resulted in a judgment for plaintiff in the sum of $167.20.   Plaintiff contends upon this appeal that it should have had judgment for the balance of the funds deposited in the bank, or in any event for the sum of $1,000, by reason of facts hereafter to appear.  Many defenses were interposed, most of which must be considered upon this appeal.   Among other things it is contended (1) that the bond was and is invalid because the plaintiff's board of supervisors had not selected and designated the Fremont County Bank as a depository at the time the bond was executed or when the check was deposited by Byars; (2) that

the check from Hawley to Byars was absolutely worthless, and that the amount represented thereby was lost to the county before Byars was elected or took his seat as treasurer; (3) that nothing ever came into the hands of the Fremont County Bank after Byars became treasurer, save the amount for which defendants were held responsible; (4) that in no event can defendants be held liable for more than $1,000; and (5) that defendants cannot be held liable for any deposit made in the bank prior to May 3, 1904.

It appears that in January of the year 1898 the board of supervisors passed a resolution authorizing the county treasurer to deposit county funds to any amount not exceeding $25,000 with such bank or banks in the county as he might designate, upon compliance with section 1457 of the Code. And in April of the year 1900 the Fremont County Bank, with McDonald, Penn and others, executed a bond similar to the one in suit whereby they undertook to save Hawley, the then treasurer of the county, harmless from loss by reason of any deposit he might make in the said bank. This bond was for $10,000, and it was approved in May of the year 1900. The bond in suit was executed January 5, 1904, and bears the approval of Byars, treasurer, and of the chairman of the board of supervisors, each of date of January 5, 1904. It is in the penal sum of $2,000, and is conditioned as follows: " The conditions of this obligation are such that, if the said Fremont County Bank, as depository of public funds, shall properly account and pay over on proper demand all public money which may be deposited with the said Fremont County Bank by H. C. Byars, as treasurer of Fremont county, and shall hold the said treasurer harmless from all loss by reason of all deposits which he may make with the said Fremont County Bank, then this obligation to be void and of no effect; otherwise, to remain in full force and virtue in law." The board of supervisors of plaintiff county also passed a resolution on the 6th day of January, 1904, expressly approving the bond in suit. We also find the

following resolution of the board passed on May 3, 1904: " Resolved, that the county treasurer is hereby authorized to deposit county funds in the amounts herein stated, to-wit: The Fremont County Bank, $1,000; provided, that any of said banks before receiving such deposit shall file a bond conditioned as required by law and in compliance therewith, and bonds filed and approved since January 1, 1904, that are in compliance with the law and this resolution, shall be held good as per such approval.   H. C. Vanatta, Chairman, Attest:   J. D. McKean, Auditor."

In addition to the Hawley check, Byars, treasurer, made the following deposits:   May 23d, 1904, $52.18; May 24th, $34.52; July 11th, $600.   The items $34.52 and $52.18 represent the taxes of McDonald, cashier of the bank for which the treasurer was given credit on the books of the bank without any money passing through his hands.   The county treasurer, Byars, as we have said, drew out all but $1,349.89 of the total amount which it is claimed was deposited in the bank.   The trial court evidently charged the defendants with the amount of the $600 deposit, and gave them credit for the amount actually drawn out by the treasurer.   Sections 1461, 1456 and 1457 of the Code of 1897 as amended read as follows:

When a county treasurer goes out of office, he shall make a full and complete settlement with the board of supervisors, and deliver up all books, papers, moneys, and all other property pertaining to the office, to his successor, taking his receipt therefor.   The board of supervisors shall make a statement of State dues to the Auditor of State, showing all charges against the treasurer during his term of office, and all credits made, the delinquent taxes and other unfinished business charged over to his successor, and the amount of money paid over to his successor, showing to what year and to what account the amount so paid over belongs.   It shall also see that the books of the treasurer are correctly balanced, before passed into the possession and control of the treasurer elect.

If the State treasurer or any county treasurer, by him-

self or through another, discounts auditor's warrants either directly or indirectly, he shall upon conviction be fined in any sum not exceeding one thousand dollars.

A county treasurer shall be liable to a like fine for loaning out, or in any manner using for private purposes, state, county, or other funds in his hands, except that when permitted by the board of supervisors by resolution entered of record he may deposit such funds in any bank or banks in the State, to any amount fixed by such resolution; and the county may receive such rate of interest on the money so deposited as may be agreed upon by the treasurer, board of supervisors, and the bank; but before such deposit is made such bank shall file a bond with sureties, to be approved by the treasurer and the board of supervisors, in double the maximum amount permitted to be deposited, conditioned to hold the treasurer harmless from all loss by reason of such deposit or deposits. Said bond shall be filed with the county auditor and action may be brought thereon either by the treasurer or the county, as the board of supervisors may elect. And the State treasurer shall be liable to a fine of not more than ten thousand dollars for a like misdemeanor. But nothing done under the provisions of this section shall alter or affect the liability of the treasurer or the sureties on his official bonds.

The case is argued on the theory that the bond in suit was unauthorized, without authority of law, contrary to the statutes quoted, against public policy and therefore void. This is denied by plaintiff and it further insists that defendants are estopped from denying the validity of the bond, and that in any event the bond is good as a common-law obligation, and is not contrary to law or opposed to public policy. In our view of the case it is not necessary to determine this question. Conceding *arguendo* that the bond when given, was unauthorized and contrary to the provisions of section 1457 of the Code as amended, because the board of supervisors had not by resolution entered an order of record permitting the treasurer to deposit funds in the defendant bank, it yet appears that on the 3d day of May, 1904, the

1. SURETYSHIP: liability for county deposits.

board did pass such a resolution, and ratified and confirmed the bond given in this case, and permitted the county treasurer to deposit in defendant bank the sum of $1,000. This order was not perhaps retroactive save as it ratified and confirmed the bonds already given, but there is no reason why the county could not accept bonds already given as in compliance with the statute and with its order then entered of record. When so ratified the defendants became liable for all funds then on deposit in the bank and for all that might subsequently be added thereto to the extent of $1,000. Of course defendants could not be held liable on this theory of the case for any sums which had been lost to the county prior to May 3, 1904 — the date of the resolution referred to — for the plain reason that the validation of the bond would not make defendants liable for losses which had actually occurred prior to that time. On this theory of the case defendants became liable on their bond for all moneys in the bank, and for all such as were thereafter made to the extent of $1,000.

There is much to be said in favor of the proposition that the bond was valid when given, and that defendants are estopped from insisting that the Fremont County Bank was not properly selected as a county depository under the statute quoted. Were it not for the peculiar language of this statute we should have no difficulty in so finding. The language of this enactment is peculiar, and perhaps it should be so read as to treat the depositing of county funds in a bank as the equivalent of a loan such as prohibited by law. But there is much force in the suggestion that defendants are estopped from saying that the defendant bank was not properly selected as a depository in accordance with section 1457 of the Code as amended. Under somewhat similar statutes sureties have been held estopped in other jurisdictions from making such a plea as is here relied upon. *State v. Bates,* 36 Vt. 387; *Board v. State Bank,* 64 Minn. 180 (66 N. W. 143); *People v. Evans,* 29 Cal. 430; *Board v. Gray,* 61 Minn. 242 (63 N. W. 635); *Board v. Loan &*

*Trust Co.,* 75 Minn. 489 (78 N. W. 113) ; *Henry Co. v. Salmon,* 201 Mo. 136 (100 S. W. 20) ; Mechem, Pub. Officers, sections 296 and 341, and cases cited; Brandt on Suretyship, sections 520 and 521.    This question is not free from difficulty, and it is not necessary that we decide it now.

Assuming that the bond was good when executed either as a statutory bond or as a common-law obligation, it does not follow that defendant's liability extended to the full amount of the penalty therein named, to-wit, $2,000, or to the full amount of the deposits made in the bank by the county treasurer.    For some reason the board of supervisors entered of record the resolution before quoted of date May 3, 1904.    This must have been either for the purpose of validating the bond previously given or of reducing or limiting the amount which might be deposited by the treasurer in the defendant bank.    If, to validate the bond, it became a limitation upon the amount which might properly be deposited thereunder, and if, for the purpose of reducing or limiting the amount which might be deposited under the bond treating it as valid from its inception, it, in so far as the sureties are concerned, had the same effect; that is to say, if the bond be treated as valid from its delivery in January, the resolution of May 3d had the effect to reduce the sureties' liability thereunder to the amount named in that resolution.    The sureties had the right to rely upon the county treasurer immediately reducing the amount to the sum authorized, and in view of that resolution the county cannot now be heard to say that notwithstanding the neglect of its officers to do their duty toward the sureties it will hold them to the full amount of the loss, not exceeding the penalty named in the bond.    The resolution provided that no more than $1,000 should be deposited in the defendant bank, and the county treasurer if he had done his duty would have diminished his deposit to that amount; and the sureties on the bond had the right to rely upon his doing so.    In other words, the amount of their liability was by

2. SAME.

this resolution reduced to the sum authorized to be deposited in the defendant bank. So that, no matter whether the bond be valid from its inception or validated by the resolution of May 3, 1904, defendants' liability is limited by the resolution to the sum of $1,000, and to that extent only may they be held liable. The trial court evidently held the bond valid, for it rendered judgment thereon to the amount hitherto stated. That conclusion seems to be correct, no matter which theory of the case be adopted.

II. This brings us to the next proposition, and that is that neither on January 5 nor on May 3, 1904, had the defendant bank any money belonging to the county. In other words, it is contended that the bank was in-

3. SAME.

solvent on both dates, and that the money was lost to the county before Byars became treasurer. This proposition is one of fact. Of course, if the money was in fact lost to the county before defendants became obligated upon the bond in suit, the sureties thereon cannot be held liable for any defalcation occurring before they assumed any obligation to the county or to its treasurer. It appears from the testimony that the bank was a going concern from January, 1904, until November 1, 1906. Defendant McDonald was cashier, and so far as shown neither he nor the bank had refused payment of checks until some time in the year 1905, when the check for $350 issued by the county treasurer was not paid in full. We now quote the only other testimony regarding the solvency of the bank. It came from McDonald the cashier, and reads as follows:

Knew H. E. Hawley, county treasurer, while he was treasurer of Fremont County. Upon the 7th day of January, 1904, H. C. Byars, treasurer, presented to me a check drawn by H. E. Hawley, treasurer. I did not pay the check. Why, of course, if they had insisted on payment of it I might possibly have arranged it; but just on the spur of the moment I do not think I could have paid the check. I think there has been no time since May 3, 1904, that I had the means in my own name and right to pay the check.

Did not have it in cash May 3d. The bank did not have the moneys or credits in its own right January 7, 1904, to take up the check. Q. Now, I want you to state, Mr. McDonald, if all of your property of every description, on the 7th day of January, 1904, was not heavily mortgaged? A. So far as my recollection of what I had, it was. Q. You had some abstract books and they were mortgaged? A. Yes, sir. Q. Tell the court whether or not the mortgage took the abstract books. A. Yes, sir. Q. State whether or not your bank building at that time was mortgaged. A. Yes, sir; Chas. Magel had a mortgage on the bank building for $2,500. That mortgage did not take the building. I gave a deed to secure a second mortgage on the bank. Owed a bank at Des Moines $2,500. I am a brother-in-law to the defendants A. V. Penn and C. J. Edsen. We married sisters. I was in the banking business in 1904 receiving deposits from anybody that would come there and deposit with me. Was advertising myself as a banker. Continued in the banking business at Sidney, Iowa, until November 1, 1906. Received deposits from January, 1904, to November 1, 1906, at said bank.

He further testified as shown by the record:

Q. Now, has there been any time since that time, Mr. McDonald, prior to the 3d day of May, 1904, that you have the means in your own name and in your own right to pay that check [$1,095.99]? A. Prior to that time? Q. Prior to May 3, 1904, at any time between the 7th of January, 1904, and the 3d day of May, 1904? A. No, sir, I think not. Q. Did you have it on the 3d day of May? A. Not in cash. Q. Did you have, on the 7th day of January, 1904, any moneys or credits in your own right sufficient to pay and take up that check, or did the Fremont County Bank have it? A. No, sir. Q. State whether or not the Fremont County Bank at any time between the 7th day of January, 1904, and the 3d day of May, 1904, in its own right and own name, have any funds with which to meet and take care of this check? A. No, sir; all of my property on the 7th day of January, 1904, was heavily mortgaged so far as my recollection goes. My bank building was mortgaged — the mortgage took the bank building — which indebtedness existed prior to January 1, 1904. Magel had a mortgage of

twenty-five hundred, and there was a second mortgage, and the bank building went to pay the second mortgage. I also owed a bank in Des Moines twenty-five hundred dollars.   Q. Has there been any time, Mr. McDonald, since the 7th day of January, 1904, that the Fremont County Bank, or yourself, with funds belonging to yourself or the bank, could have paid or taken up this check of Mr. Hawley for $1,095.99 ? A.   No, sir.

Is this sufficient to show that the bank was insolvent and the money lost to the county before May 3, 1904 ?   We think not.   The bank at that time was a going concern.   So far as shown it had never down to that date refused to pay any checks drawn upon it.   Indeed the cashier said that he could have paid on January 7th, if the money had been demanded.   No checks were dishonored so far as shown until some time in the year 1905, and, these were not dishonored in law.   The cashier simply pleaded for time, and was granted it, upon payment of $50 upon a $350 check.   The bank continued in business meeting its obligations in one way or another for more than a year after that time.   Indeed, it paid the county treasurer or honored his checks to the amount of $433.80 after the deposits were made.   The deposits were not special but general, and upon these county deposits the bank was simply a debtor to the county or to the treasurer.   So long as it was able to pay its debts and continue in business the money was not lost to the county, but for all practical purposes was still in the bank.   The bank did not become insolvent until it was unable to pay its debts in the usual and ordinary way, and the testimony shows that this did not occur until the year 1905.   So that defendants became liable on their bond to the extent of $1,000 from May 3, 1904.   At that time there was on deposit the amounts heretofore stated.   This was reduced by payments from time to time until the balance in May, 1906, was $1,344.89.   The bank refused payment of this balance May 14, 1906.   The testimony shows that all payments made by the bank were after May 3, 1904.   Our conclusion on this branch of the

case is that for all practical purposes the county money was in the bank on May 3, 1904, was not lost to the county before that date, and that defendants' obligation on the bond is limited only by the penalty and by the resolution of May 3, 1904, fixing the amount which the county might deposit in the bank at $1,000. Having that much or its equivalent in the bank on May 3, 1904, and the amount never being reduced below that sum, defendants are liable for the same, with interest from the time of demand, to-wit, May 14, 1906, at the rate of 6 per cent. per annum.

III.   The trial court evidently held defendants liable for the amounts deposited after May 3d, and gave them credit for all amounts drawn out by the county treasurer no matter whether paid before or after May 3, 1904. Indeed, there is no showing in the record as to just when these payments were made. The question as to the application of payments is not argued, and it is not necessary for that reason to decide it. However, as no application seems to have been made by either party at the time the money was drawn from the bank, it may become necessary to decide how this application should be made in order to establish the extent of defendants' liability. Finding as we have that there was on deposit in the bank at least $1,000 on May 3, 1904, and that more than $600 was thereafter deposited, there would still remain in the bank more than $1,000, even should we find that the entire $453.80 should be credited against that' sum rather than on the overdeposit of $95.99. If defendants are simply to be held liable for the amounts deposited after May 3d, and not for the amount then in the bank, we think that the entire credits of $453.80 should have been applied upon the earlier deposits under the rule generally established that, when neither debtor nor creditor have made application of payments, they should be applied upon the earlier rather than the later accounts. *Schoonover v. Osborne,* 108 Iowa, 453. This is the rule established as to

4. SAME: application of payments.

sureties on such bonds as the one now before us. See *Henry Co. v. Salmon,* 201 Mo. 136 (100 S. W. 28) ; *Board v. Am. Trust Co.,* 75 Minn. 489 (78 N. W. 113) ; *Brown v. Board,* 58 Kan. 672 (50 Pac. 888). This rule obtains even where sureties are concerned. *Hanson v. Manley,* 72 Iowa, 48 ; *White v. Beem,* 80 Ind. 839 ; *Livermore v. Claridge,* 33 Me. 428. Indeed, the rule as sometimes stated is that the application should be made to the unsecured rather than the secured indebtedness. While there is a contrariety of opinion upon this point we have adopted the rule stated. *Smith v. Moore,* 112 Iowa, 60 ; *Bishop v. Hart,* 114 Iowa, 96 ; *Tolerton v. Roberts,* 115 Iowa, 474. No matter what view may be taken of the case, the trial court was in error in reaching the conclusion that it did.

The judgment should have been for $1,000, with 6 per cent. interest from May 14, 1906.

The judgment must be, and it is, *reversed.*