(No. 2931.    March 5, 1924.    Rehearing Denied April 14, 1924.)

GREGG et al. v. HINKLE et al.

### SYLLABUS BY THE COURT.

1. Where a public deposit is secured in part by a depository bond or bonds and in part by the pledge of public securities, section 9 of chapter 76 of the Session Laws of 1923 directs a prorating of liability for the depository's default between the public securities, as a class, on the one hand, and the depository bonds, as a class and whether with personal or corporate securities or both, on the other,

but leaves the depository securities jointly and severally liable to the extent of the respective undertakings for the loss remaining after prorating with the public securities.

2. The provisions of chapter 76 of the Session Laws of 1923, forbidding public deposits in an amount greater than 90 per cent, of the penal amount of the securities given to secure such deposit, does not create a limitation on the liability of the sureties to an amount less than the face of their undertakings, but is a police regulation directed to the depositing officers as an additional element of safety, in order that not only the principal of the deposit, but the accretions as well may be fully secured.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action by L. B. Gregg, Receiver, and another, Co-receiver, of the Exchange Bank of Carrizozo, against James F. Hinkle and others, members of the State Board of Finance, and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded, with directions.

Milton J. Helmick, Atty. Gen., and J'. W. Armstrong, Asst. Atty. Gen., for appellants.

Wilson & Perry, of Santa Fe, for appellee intervener.

A. H. Hudspeth, of Carrizozo, and E. R. Wright, of Santa Fe, for other appellees.

### OPINION OF THE COURT.

BOTTS, J. The Exchange Bank of Carrizzozo closed its doors on October 8, 1923, and thereafter the appellees were appointed receivers thereof. The bank had previously qualified as a depository of state moneys, and, at the time of closing, had on deposit state funds in the sum of $72,725.05. The deposit was secured by (1) a depository bond in the penal sum of $5,000, with the American Surety Company as surety; (2) a depository bond in the penal sum of $5,000, with the United States Fidelity & Guaranty Company as surety; (3) depository bonds aggregating a total penal sum of $23,005 with various personal sureties; and (4)

a pledge of United States Liberty bonds of the par value of $56,800. The demand of the state treasurer for the payment of the state deposit having been refused, the state board of finance took steps to make good its loss out of the securities, and, to that end, advertised, that said Liberty bonds would be sold at public auction on the 10th of December, 1923, with the intention of converting them into cash in conformity with the provisions of the Public Moneys Act, and applying the entire proceeds upon the state's loss. Before the advertised date of sale, the receivers, under authority of an order of the district court in which the receivership case was pending, arranged for the necessary funds and tendered to the board of finance an amount equal to 90 per cent of the par value of said Liberty bonds, plus the amount of interest accretions and costs of advertisement, and demanded the return of the bonds. This demand was refused under claim that the state could hold the full value of said bonds to make good its loss. Thereupon the receivers filed their bill seeking to enjoin the sale on the theory (1) that said securities were not liable for the state's loss in an amount greater than 90 per cent. of their face, plus accretions and costs; and (2) that the state's loss should be prorated between the different kinds of security, which would have the effect of reducing the liability of the Liberty bonds even below 90 per cent: of their face. The American Surety Company intervened on the same theory and asked that the court ascertain the amount due the state on account of its depository bond, and that, upon the payment of the amount, so found to be due, it be released from all further obligation and liability. The board of finance demurred to the bill and the intervening petion on the ground of insufficiency of facts to constitute a cause of action. This demurrer was overruled, and, the appellants declining to plead further, the receivers and intervener submitted proofs, whereupon the court found all of the material obligations of the bill and intervening petition to be true and concluded

as a matter of law that, under the provisions of chapter 76 of the Session Laws of 1923, the legal and lawful deposit of public funds was limited to 90 per cent. of the penalty of depository bonds and to 90 per cent. of the par value of public securities pledged in lieu of such bonds, and that such 90 per cent. limitation fixes the extent of the liability of sureties on depository bonds and the maximum chargeable against public securities pledged in lieu of depository bonds, and that such liability was further limited by prorating the loss between the different securities. Under the 90 per cent limitation, the court fixed the maximum liability chargeable to the pledged Liberty bonds at the sum of $51,120, plus accretions; that chargeable to depository bonds with personal sureties at the sum of $20,250, plus accretions; that of the depository bond of the United States Fidelity & Guaranty Company at $4,500, plus accretions; and that of the depository bond of the American Surety Company at $4,500, plus accretions; and, by applying the pro rata limitation of liability, found the amount due on account of and chargeable to the pledge of Liberty bonds to be $46,-258.65, that due from the personal sureties on their depository bonds to be $18,324,28, that due from the United States Fideltiy & Guaranty Company on its depository bond to be $4,072.06, and that due from the American Surety Company on its depository bond to be $4,072.06, plus accrued interest in all cases, and plus costs of advertisement of sale in the case of the pledged public securities, and thereupon adjudged and decreed that upon the receivers paying to the state treasurer the sum found due under the pro rata limitation the state board of finance should surrender the Liberty bonds pledged, and that upon the American Surety Company paying the amount found due under the pro rata limitation it should be discharged from any and all further liability under its depository bond. From this judgment and decree, the board of finance appeals. appeals.

[1] But two questions are presented for review, the board of finance contending that the pledge of public securities is liable, jointly and severally, to the full extent of the face value thereof, for the loss suffered by the state, and that each of the sureties on the depository bonds is likewise jointly and severally liable for the loss to the full penalty of their several undertakings. The receivers and the intervener on the other hand contend for the two limitations of liability fixed by the trial court. All parties concede that the solution of these questions depends upon the correct construction of chapter 76 of the Session Laws of 1923, commonly known as the Public Moneys Act.

The act forbids the deposit of public moneys in any bank until it has qualified to receive deposits by giving a depository bond executed by an authorized surety company as provided by section 8 of the act, or by the pledge of public securities as provided by section 9 of the act, or by giving a depository bond executed by not less than three personal sureties as provided by section 19 of the act. By section 9, it is further provided:

"Any bank may furnish bonds of the character mentioned in this section as security for any portion of the maximum amount of public moneys for the deposit of which it shall apply, and may furnish a depository bond or bonds as provided in sections eight and nineteen hereof, to secure the remainder of such maximum amount. In case any bank, upon proper demand therefor, shall fail to pay any public moneys so deposited with it, if the payment of such moneys is secured in part by a depository bond or bonds, and in part by the deposit of bonds of the United States, of this state, or of any county or counties or other legal subdivision of this state, or Federal Farm Loan bonds, such depository bond or bonds and such other security shall be liable pro rata for the entire amount of such default."

This is the language upon which the trial court based the conclusion that the loss to the state must be prorated between the several securities. The appellants contend that the act in this particular does no more than declare the general rule of contribution between

sureties, a rule which would obtain even without the statute and with which the state is in no wise concerned. Under their construction of the statute appellants claim the right to hold any and all securities jointly and severally liable for the full amount of the state's loss up to the respective amounts of their several undertakings, leaving each security which may pay more than its proportionate share to compel contribution by the others. If this be the proper construction, then the Legislature did nothing by the use of the language in question and left the law exactly as it was before the enactment. In our opinion, such was not the intention of the Legislature. If it had been the intention merely to declare the common-law-rule, surely the declaration would not have been confined, as it is here, only to those cases where a pledge of public securities is among the several undertakings by which a public deposit is secured. The general rule is not so restricted. What the Legislature was dealing with in the language under consideration was the liability to the state, or other public depositor, of the depository and its sureties and securities, and when it is declared they "shall be libale pro rata" it is meant that they shall be so liable to the depositor— not as between themselves.

But, even so, we believe the court below went beyond the terms of the statute when the loss was prorated between the different depository bonds. According to our construction, the statute only directs a prorating between the public securities, as a class, on the one hand, and the depository bonds, as a class and whether with personal or corporate securities or both, on the other, leaving the depository securities jointly and severally liable, to the extent of the respective undertakings, for the loss remaining after prorating with the public securities, with the right of compelling contribution as between themselves. Under this construction, it was error for the court to fix the liability of one of the several depository bonds, that of the American Surety Company, at an amount based

on a pro rata contribution by all the depository bonds, and to order the release and discharge of the maker of the bond upon the payment of such amount.    After the pro rata liability of the public securities had been fixed, the state should have been left free to make collection of the balance of the loss from depository bonds, exactly as though the statute contained no provision for prorating the liability. .

The appellants say that our construction of the statute is precluded by section 13, relating to the sale of pledged securities on default by a depository.    The particular language relied upon is as follows:

"The proceeds realized from such sale, after payment therefrom of the expenses of the sale, shall be applied to the payment of *   * * public moneys in which said bank is in default, and for which the securities so sold were pledged, and the remainder, if any, of such proceeds shall be paid over to such bank."

It is argued that the proceeds of the sale cannot be applied to the payment of the amount of public moneys in which the banks are in default if the loss is prorated, and the argument might be sound were it not for the further qualification of the term "public moneys" by the language "for which the securities so sold were pledged." The securities were pledged in accordance with the terms of the statute, and the statute constitutes the contract between the pledgor and pledgee. Reading the whole statute together, the public money for which the securities are pledged, where the deposit is secured in part by a depository bond or bonds, is the amount as determined by prorating the loss between the pledged securities and the depository bonds under the provisions of section 9 of the act.    This construction leaves nothing inconsistent between the two provisions, and it our duty to give the act such a construction rather than one whereby inconsistencies will obtain.

[2] Coming now to the question of whether or not the

sureties and securities are liable for loss in an amount greater than 90 per cent of their face, we find a decision unnecessary in so far as it would affect the pledged securities, since the amount for which those securities are liable under the pro rata provisions of the statute is even less than 90 per cent. of their face value; but, since we have held that the pro rata provision does not apply as between the several undertakings in the class of depository bonds, it becomes necessary to determine whether the American Surety Company can be held liable to the state for the face of its undertaking or only 90 per cent. thereof. Section 8 of the statute relating to the securing of deposits by corporate securities provides that:

"Neither the state treasurer, nor any county, city or town treasurer, nor the treasurer of any board in control mentioned in section 6, shall have on deposit at any time more than ninety per centum of the penal amount of the bond or bonds given by a depository to secure such deposit."

Sections 9 and 10 contain the same provision, in practically the same language, relating to deposits secured as provided by those sections. The court below decided that the language now under consideration created a limitation on the liability of the sureties, while the appellants argue that the language is a direction to the depositing boards and officers, to the end that a margin of safety may always be maintained between the face of the undertakings and the amount of the deposit in order to take care of costs and other accretions. Appellants rely on Village of Wyoming v. Citizens' Trust & Guaranty Co., 9 Ohio App. 225; while the appellees cite Bartley v. Meserve, In re State Treasurer, 51 Neb. 116, 70 N. W. 532, 36 L. R. A. 746; Freemont County v. Freemont County Bank, 138 Iowa, 167, 115 N. W. 925; and Yellowstone County v. First Trust, etc., Bank, 46 Mont. 439, 128 Pac. 596. The statutes and facts upon which these several decisions are based seem to be wholly dissimiliar from those now under consideration, and we find nothing of material assistance in the discussions.

Our decision on this point as on the other, where we are cited to no authority, must be one of first impression. Bearing in mind that there is no contract between the depositor and depository for keeping a certain fixed amount of money with the latter, secured by a bond in a larger amount, but that the deposit may vary from nothing to the amount for which the depository has qualified, it seems to us that it must have been the intention of the Legislature not to limit the liability of the surety or sureties of the depository to an amount less than the face of their undertakings, but rather to provide an additional element of safety by a police regulation directing the depositing officers not to permit the amount of the deposit to arise above 90 per cent. of the amount for which the depository has qualified, in order that not only the principal of the deposit, but the accretions as well, might be fully secured. The duty imposed on the depositing board or officers is a duty to the public rather than to the depository or its sureties. It was error, therefore, for the court to conclude that the liability of the sureties was limited to 90 per cent. of the amount of their undertakings. The cause must be reversed and remanded with directions to proceed further in accordance with this opinion; and, it is so ordered.

PARKER, C. J., and BRATTON, J., concur.